THE SOUTH PARK COMMISSIONERS, Appellee, *vs.* CHARLES . B. WOOD *et al.* Appellants.

*Opinion filed October 27, 1915—Rehearing denied Dec. 10, 1915.*

1. PARKS—*the Park act of June 24, 1895, does not govern procedure under former acts.* In making a local improvement by special assessment park commissioners may elect as to whether they will proceed under the acts of June 16, 1871, and June 21, 1895, or under the act of June 24, 1895, and if they elect to proceed under the former acts the procedure is governed by such acts and not by the act of June 24, 1895.

2. SAME—*limit of inquiry by courts after park commissioners have made their election.* After park commissioners have elected under which statute they will proceed in making a local improvement, the courts can only inquire whether the commissioners have followed the provisions and requirements of the statute selected.

3. SPECIAL ASSESSMENTS—*when estimate of cost in gross is sufficient.* The Park acts of June 16, 1871, and June 21, 1895, do not require that the estimate of the cost of the improvement be itemized, and where the improvement is to be constructed under such acts an estimate in gross is sufficient.

4. SAME—*when a refusal to apportion part of cost to public is proper.* A refusal by the court to apportion part of the cost of a local improvement to the public is proper where the park commissioners, in making the improvement by special assessment, are proceeding under the Park acts of June 16, 1871, and June 21, 1895, as neither section 3 of the act of 1871 nor any other provision of the acts in question authorizes such apportionment.

5. SAME—*what does not constitute mere repair work.* The fact the park commissioners provide, in the ordinance for the first improvement of a street by special assessment, that the base of the old pavement, which has been in use for many years, shall be used as the base of the new pavement, does not make the improvement mere repair work instead of an improvement which may be made by special assessment.

6. SAME—*first improvement of a street means first improvement by park commissioners.* The first improvement of a street means the first improvement by the park commissioners, and does not refer to the former condition of the street as improved or unimproved.

7. CONSTITUTIONAL LAW—*provision of the statute exempting property of South Park Commissioners from assessment is invalid.* Section 15 of the act of 1869, creating the board of South Park

Commissioners, is valid in so far as it purports to exempt the property of the corporation from taxation, but in so far as it purports to exempt such property from assessment for benefits it is invalid.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

WILLIAM J. DONLIN, for appellants.

ROBERT REDFIELD, (TOLMAN, REDFIELD & SEXTON, and HENRY P. CHANDLER, of counsel,) for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

On November 6, 1914, the South Park Commissioners filed their petition in the circuit court of Cook county seeking confirmation of a special assessment theretofore made by them against certain lots and tracts of land to defray the cost of improving that part of Hyde Park boulevard formerly known as East End avenue, from the south line of that portion of Hyde Park boulevard formerly known as East Fifty-first street to the south line of East Fifty-sixth street, in the city of Chicago. The petition alleged that on June 17, 1914, the South Park Commissioners passed an ordinance for the first improvement of East End avenue, and thereafter, on August 19, 1914, amended the same, a copy of the ordinance as amended being attached to the petition and made a part thereof; that the commissioners gave notice, by publication in the *Chicago Herald*, that they would on August 19, 1914, at three o'clock in the afternoon, at their office, proceed to estimate the probable cost of the first improvement of East End avenue in conformity with the provisions of the ordinance above mentioned as the same might be amended, together with the cost of making and collecting the special assessment provided for in said ordinance, and that at the same time and place they would also proceed to levy a special assessment

upon the property which would be benefited by said improvement for a sum not to exceed the estimated cost of the improvement, together with the cost of making and collecting the special assessment, which notice was published in said newspaper more than ten days prior to August 19, 1914; that at the time and place specified in said notice the commissioners proceeded to estimate the probable cost of the first improvement of East End avenue, together with the cost of making and collecting said special assessment, and having heard all parties present interested therein the commissioners estimated such probable cost at $59,-175.44, and made and completed said assessment in an assessment roll which was thereafter filed with the clerk of the circuit court of Cook county; that said assessment is divided into five installments, bearing interest at the rate of six per cent per annum; that the portion of Hyde Park boulevard ordained to be improved was prior to the passage of said ordinance duly selected and taken by the South Park Commissioners for boulevard purposes, and at the time of the passage of said ordinance was, and still is, a boulevard under the control and government of the South Park Commissioners. Certain property owners filed objections to the confirmation of the assessment against their lands. After hearing the cause the court overruled the objections, slightly modified the assessment roll, and rendered judgment confirming the assessment made by the commissioners as modified by the court. From that judgment this appeal has been prosecuted by the objectors.

The evidence introduced by the respective parties upon the hearing shows that East End avenue is a street eighty-five feet in width, extending south from Fifty-first street a distance of five-eighths of a mile to Jackson Park, and constitutes the principal approach to Jackson Park from the north; that about the year 1887 East End avenue was improved by constructing a macadam roadway fifty feet in width, with a wearing surface of red-granite screenings;

that the gutters were constructed of cobblestones, and curbs were placed on each side of the roadway; that sidewalks seven feet in width were laid on each side of the street, and that the spaces between the curbs and the sidewalks were left for grass plots; that at some period prior to 1909 a system of gas street-lighting was installed along the sides of the street; that in 1909 East End avenue was taken over by the South Park Commissioners; that the surface of the street pavement was then smooth and the street was in good condition; that in 1910 the South Park Commissioners made a special assessment for the improvement of East End avenue and filed a petition in the circuit court of Cook county for the confirmation of the assessment; that in that petition was set forth an ordinance passed August 2, 1910, for the improvement of East End avenue, providing for the construction of a driveway forty feet in width upon the macadam pavement then upon the street; that it also provided for the construction of curbs and for planting spaces fourteen feet wide adjoining the curbs, and for the construction throughout of new sidewalks eight feet in width, for the construction of catch-basins connected with existing sewers, and for the installation of an electric lighting system to take the place of the gas lighting system. It also provided for the installation of lawn sprinkling hydrants and vaults for street sweepings. It appears that upon a hearing in that proceeding the petition was dismissed without prejudice to the right of the commissioners to begin a new proceeding, on the ground that the street was then improved to such an extent and in such manner that the ordinance then before the court was unreasonable and void. It further appears from the evidence that since East End avenue was taken over by the South Park Commissioners there has been a large increase in the travel over the street, and that the vehicles passing over the street are almost exclusively automobiles being driven to and from Jackson Park; that on

week days the number of automobiles passing over the street to and from Jackson Park averages one hundred per hour and twice that number on Sundays; that while the surface of the roadway was smooth and in good condition when the street was taken over by the South Park Commissioners, the heavy travel has worn, and continues to wear, holes and depressions in the pavement, which condition extends generally over the entire surface of the roadway; that the South Park Commissioners have from time to time since 1909 filled the holes and depressions with limestone and have caused the surface of the street to be re-rolled each year, but that such repairs are only temporary, and that in dry weather the driveway becomes dirty and dusty and in wet weather becomes sloppy; that the cobblestones render the gutters rough and difficult to drain and the gutters are consequently muddy; that the macadam roadway has a high crown, rendering driving thereon unpleasant; that the curb-stones are shattered and worn away in many places and are irregular as to grade; that a considerable portion of the sidewalks are out of grade, with the result that water either stands in places or flows in the wrong direction, and that the mortar in the walls of the catch-basins has disintegrated, leaving the catch-basins in bad condition.

On June 17, 1914, the commissioners passed an ordinance providing for the improvement of East End avenue, the cost thereof to be met by a special assessment to be levied upon the property to be benefited thereby. Notice of a meeting to be held on August 19, 1914, at which the commissioners would proceed to estimate the probable cost of the first improvement of East End avenue and to levy a special assessment upon the property to be benefited by the improvement, was given as stated in the petition. On August 19, 1914, the commissioners met at the time and place specified in the notice and passed an amended ordinance, being the ordinance attached to the petition. The

amended ordinance in effect provided for a reduction in the width of the roadway to forty feet. It provided that the present macadam pavement, after being brought to the crown and grade specified in the ordinance, should be used as the base for the new pavement to be constructed, and specified that the new pavement to be placed on such base should consist of a layer of crushed limestone one and one-half inches in thickness, a layer of asphaltic concrete two inches in thickness, and a top dressing of dry red-granite chips rolled into a skim coat of pure asphaltic cement spread on the layer of asphaltic concrete. The amended ordinance also provided for the placing of concrete curbs along each side of the forty-foot driveway and for the adjustment of existing sidewalks to conform to the grades prescribed by the ordinance. It was also provided that where sidewalk stones in the existing sidewalks are unfit for use they should be replaced with new concrete sidewalk stones. The ordinance further provided that in the spaces lying between the curbs and the sidewalks planting spaces should be laid out; that the planting spaces should be excavated and filled with a good quality of black earth to a depth of twelve inches; that 135 American elm trees should be planted in said planting spaces at places designated by the ordinance, and at the edge of the curb on each side of the roadway there should be planted a line of shrubbery forming a continuous hedge with openings at specified places, and that the portions of the planting places not occupied by shrubbery and trees should be seeded with a good quality of lawn grass. The proposed improvement as specified in the amended ordinance also included a system of electric lighting to take the place of the system of gas lighting theretofore in use along the boulevard. The construction of the electric lighting system included the placing of fifty-eight electric light posts along that portion of the boulevard to be improved and the placing of conduits below the surface of the ground for the electric cables

supplying the current. The ordinance also provided for the construction of thirty-eight catch-basins and the adjustment of man-holes. It was provided that the improvement should be made and the cost thereof paid by a special assessment to be levied, assessed and collected upon the property to be benefited by the improvement, in the manner in which the South Park Commissioners are empowered by law to levy, assess and collect special assessments for benefits in other cases, in accordance with and in pursuance of the authority conferred by an act of the General Assembly of this State entitled "An act to enable park commissioners or park authorities to take, regulate, control and improve public streets, and to pay for the improvement thereof," approved June 21, 1895, in force July 1, 1895, and the amendments thereto, and also in pursuance of an act entitled "An act to enable the corporate authorities of two or more towns, for park purposes, to issue bonds in renewal of bonds heretofore issued by them, and to provide for the payment of the same; to make, revise and collect a special assessment on contiguous property, for benefits by reason of the location of parks and boulevards, and to make necessary changes in their location," approved June 16, 1871, in force July 1, 1871.

At the same time the petition was filed there was also filed with the clerk of the circuit court an assessment roll made by the commissioners, in which was set forth the amount assessed against each lot or tract of land which in the judgment of the commissioners would be specially benefited by the construction of the proposed improvement. The assessment roll recited that it was made on August 19, 1914, and was returned to the clerk of the circuit court in pursuance of and in accordance with the authority conferred by the said acts of June 16, 1871, and June 21, 1895, and that the estimated cost of the improvement, together with the cost of making and collecting the assessment, was the sum of $59,175.44.

The grounds urged by the appellants for reversal are, (1) that there is no warrant or authority in law for the proceedings taken by the commissioners; (2) that proper notice of the time and place of the hearing before the commissioners was not given to the owners of property assessed; (3) that the assessment is void because the commissioners failed to make an itemized estimate of the cost; (4) that the assessment made by the commissioners is void because there was no apportionment of the cost to the public, and the court erred in refusing to assess any portion of the cost against the municipality for benefits to the public; (5) that the court erred in refusing to increase the assessment against Jackson Park; (6) that the assessment against appellants' lands exceeds the benefits which they will derive from the improvement; (7) that the ordinance is unreasonable; and (8) that the work to be done is that of repair work, and no assessment can be made against private property therefor.

The basis of the first ground urged is that this proceeding should have been had under the act of June 24, 1895, entitled "An act to enable park commissioners or park authorities to make local improvements and provide for the payment therefor," (Laws of 1895, p. 286,) instead of under the acts of June 16, 1871, and June 21, 1895. A determination of whether the proceedings were properly had under the two earlier acts will necessarily dispose of some of the other points raised. It is conceded by appellants that under the holding in *South Park Comrs. v. Pearce,* 248 Ill. 578, the act of June 24, 1895, did not supersede the acts of 1871 and June 21, 1895, but that the act of June 24, 1895, granted powers in addition to those already vested in park authorities by the other two acts and the amendments thereto. Appellants urge, however, that the later act lays down the course of procedure which governs in all proceedings of this character, whether brought under that act or under the former acts, and that the pro-

cedure outlined in the act of June 24, 1895, must be followed. This contention cannot be upheld. One of the main questions raised in *South Park Comrs.* v. *Pearce, supra,* was a question of procedure, it having been there contended that as the act of June 24, 1895, required the petition for assessment to be filed in the county court, the circuit court had no jurisdiction of the proceeding. This was purely a question of procedure, and we held that the act of June 24, 1895, did not take away the jurisdiction of the circuit court, under the act of 1871, to entertain a petition by the park commissioners to confirm a special assessment levied for corporate purposes. While the situation may be somewhat anomalous, the park commissioners have the option to institute these proceedings under whichever statute they desire. It is a situation created by the legislature, and when the park commissioners have once elected as to which statute they will proceed under, the courts can then determine only whether or not they have followed the provisions and requirements of that statute. By the ordinance the park commissioners expressly ordained that it was their intention to proceed under the acts of 1871 and June 21, 1895, and the proceedings conformed to the provisions of those acts and the amendments thereto.

The objection that proper notice was not given is based, as we understand it, upon the contention that the proceedings were not governed by the former acts. The notice was given pursuant to the requirement of the act of 1871 and was sufficient. These statutes do not require that the estimate of the cost of the improvement should be itemized, and in the absence of such a requirement an estimate in gross is sufficient.

Section 3 of the act of 1871 provides that the corporate authorities of one or more towns who have been authorized to make, establish or maintain any local improvement in whole or in part by special assessment, shall apportion the

estimated cost upon the lands situated in said towns deemed by them benefited by reason of such local improvement, as near as may be in proportion to the benefits resulting thereto, and it is upon this provision that appellants base their contention that there should have been an apportionment of the cost to the public. Upon this theory appellants attempted to prove that the whole park district would be benefited by this improvement, and contend it was the duty of the park commissioners and the court to assess a part of the improvement to the public. In the absence of express statutory authority courts are without jurisdiction to assess any part of the cost of local improvements against a municipality on account of public benefits. (*Fagan* v. *City of Chicago*, 84 Ill. 227; *Watson* v. *City of Chicago*, 115 id. 78; *Billings* v. *City of Chicago*, 167 id. 337; *City of Ottawa* v. *Colwell*, 260 id. 548; *City of Watseka* v. *Orebaugh*, 266 id. 579.) The act of 1871 did not give express authority to apportion a part of the cost of the improvement therein provided for against the public, and the language of section 3 of that act, above referred to, will not bear the construction sought to be placed upon it by the appellants. By that act the corporate authorities of the towns vested with the power therein conferred are authorized to make local improvements by special assessment upon property specially benefited, and the language used does not import the power to apportion a part of the cost against the public, to be met by raising money by general taxation. The action of the park commissioners in failing to assess any benefits against the public, and the action of the court in refusing to admit testimony as to whether the public would be benefited, were proper.

The park commissioners, in the assessment roll, assessed $500 against Jackson Park for benefits to the park, and it is insisted that the court erred in refusing to increase this assessment. On the other hand, the appellee contends that Jackson Park is exempt from assessment, and in support

of its contention relies upon section 15 of the act of February 24, 1869, creating the board of South Park Commissioners. (1 Private Laws of 1869, p. 358.) Section 15 of that act provides that "the real estate and personal property of said corporation shall be exempted from taxation and assessment." In *People* v. *Salomon,* 51 Ill. 37, it was held that said section 15, in so far as it exempted the property of the corporation from taxation, was a valid enactment under the constitution of 1848. In that case the question whether this section exempted the property of the corporation from liability to pay special assessments for local improvements, and if so whether the exemption was valid, was not involved. In *City of Chicago* v. *Baptist Theological Union,* 115 Ill. 245, the Baptist Theological Union claimed to be exempt from the payment of special assessments for benefits under a provision of its charter granted by the legislature in 1865, which was as follows: "The property, real and personal, belonging to said corporation, at any and all times hereafter shall be free and exempt from all taxation and assessments, special or general, for any and all purposes whatever." It was there held that the constitution of 1848 prohibited the legislature from granting the Baptist Theological Union any exemption except from taxation, and that the assessment for benefits therein questioned did not come within the meaning of that term as used in its charter and that such an attempted exemption is void. So far as the power to exempt them from taxation under the constitution of 1848 is concerned, the South Park Commissioners and the Baptist Theological Union are in the same class, and the holding in *City of Chicago* v. *Baptist Theological Union, supra,* applies here. Under that holding, section 15 of the act creating the board of South Park Commissioners, in so far as it attempts to exempt the property of the corporation from special assessment for benefits, is void.

The evidence did not warrant an increase in the assessment against Jackson Park. While witnesses on the part of objectors testified that the park would be specially benefited from $10,000 to $20,000, and witnesses on the part of the park commissioners testified that there would be no special benefits whatever, the testimony of these witnesses, when closely analyzed, is not so contradictory as these figures would indicate. The principal element of benefit upon which the witnesses for the objectors based their estimate was a benefit accruing to the public generally by reason of the better facilities afforded by the improvement for reaching the park. The witnesses for the park commissioners, while apparently appreciating this benefit to the public, properly differentiated between that and a direct benefit to the park itself. To urge that the assessment against Jackson Park should have been increased on this testimony is simply an argument for an assessment for public benefits in the form of an assessment against the park.

A number of witnesses testified on the question of benefits accruing to the property adjacent to the improvement. Among these were a number of those who owned property abutting on this street and elsewhere which was assessed for benefits. It will not be necessary to go into an extended discussion of this testimony. It is sufficient to say that the great weight and preponderance of the testimony was to the effect that the benefits to be derived from this improvement by the property assessed were far in excess of the assessment made.

The contention that the ordinance is unreasonable can not be sustained. As set forth above, it was shown conclusively that the pavement of this street, which had been used continuously for twenty-eight years, had greatly deteriorated, and the uses to which it was put demanded that it be replaced. While the park commissioners proposed to use the base of the old pavement as the base of the pavement contemplated in the improvement, the work contem-

plated was not repair work but constituted such a first improvement of the street as the statute authorizes the park commissioners to make by means of special assessment. In *South Park Comrs.* v. *Pearce, supra,* it was held that such a first improvement of a street means the first improvement made by the park commissioners, and it does not refer to the former condition of the street as improved or unimproved. The work proposed by this improvement was too extensive to come within the designation of repair work, and was such an improvement as the statute authorized the park commissioners to make.

We perceive no error in the record, and the judgment of the circuit court is affirmed.    *Judgment affirmed.*