(No. 13720.—Reversed in part and judgment here.)
C. VOIGHT, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(AUGUST KLEINE, Defendant in Error.)

*Opinion filed February 15, 1921—Rehearing denied April 8, 1921.*

1. EVIDENCE—*a doctor of chiropractics may testify as an expert.*  Anyone who is shown to have special knowledge and skill in diagnosing and treating human ailments is qualified to testify as an expert if his learning and training show that he is qualified to give an opinion upon the particular questions in issue, and where the extent of an injury to the spine is the subject of investigation, the testimony of a doctor of chiropractics who is shown to be qualified to give an opinion should be admitted.

2. SAME—*what determines weight of testimony of expert.*  The weight of the testimony of an expert witness is to be determined by the character, capacity, skill and opportunity of the witness to know and understand the matters about which he testifies and his state of mind or fairness to the parties litigant.

3. WORKMEN'S COMPENSATION—*when an award for partial incapacity is not justified.*  An employee is physically able to work when he can do so without seriously endangering his health or his life, and if an injured employee earns, *or is able to earn,* in a suitable employment the same amount of wages as he received before he was injured, an award for partial incapacity is not justified under paragraph (*d*) of section 8 of the Compensation act, even though the employee suffers pain when he works.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

R. W. ROPIEQUET, for plaintiff in error.

A. W. KERR, and F. H. KRUGER, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This writ of error is prosecuted by leave of this court to review a judgment of the circuit court of St. Clair county affirming an order of the Industrial Commission of December 5, 1919, awarding to August Kleine, defendant in error, compensation for accidental injuries received while employed in the coal mine of C. Voight, plaintiff in error,

doing business as the South Belleville Coal Company. The award was for $12 per week for twenty-seven and four-sevenths weeks for temporary total incapacity, and for the further sum of $6 per week for a period of three hundred eighty-seven and three-sevenths weeks for partial incapacity to work. The order recited that the $6 per week allowance was one-half the difference between what he earned before the injury and the amount he was able to earn in suitable employment since the injury. Plaintiff in error was credited by the order with $311.43 paid Kleine as compensation.

Defendant in error sustained his injury on October 10, 1918, by being caught under a cage operated by plaintiff in error. An X-ray picture taken the following day disclosed a fracture of a protuberance of one of his lumbar vertebræ, but according to the testimony of Dr. Twitchell there was no injury to the main body of the vertebra or of the spinal column. He had contusions of the lumbar muscles of the back and apparently suffered a good deal of pain for some time from such injury. Dr. Twitchell, who treated him for his injury, further testified that on April 1, 1919, defendant in error had been walking around for a good while; that he examined him at that time and thought he was able to do light work, and so reported to plaintiff in error; that basing his opinion upon his experience in the treatment of defendant in error, and from such examination, he did not think that his injury was permanent, and that he had no doubt that the fracture was entirely healed and that the vertebra had assumed its normal strength and its normal condition. It was his opinion that the defendant in error was in as good condition to do work as he was before the accident.

Mrs. Louettie Fullmer, a chiropractor for more than four years and a graduate of the Palmer School of Chiropractics at Davenport, Iowa, and licensed as a chiropractor under the Drugless Healing act of Illinois, testified, over the objection of the plaintiff in error, that chiropractors deal

with posterior or lateral subluxations of the spine; that she examined the defendant in error and found two vertebræ affected in the lower lumbar region of the spine and a very prominent subluxation in the lower lumbar region; that that kind of injury usually causes extreme pain in the back and especially in the stooped posture; that this is due to the nerves being impinged by the two vertebræ being subluxated posteriorly, which squeezes or pinches the spinal nerve; that when she first treated Kleine for this condition she thought he could not do very much manual labor and advised him not to do any; that later she told him that he could try to do some work but not heavy work, and that in her opinion his decreased working efficiency for the purpose of doing manual labor amounted to at least seventy-five per cent.

The defendant in error testified that since the hearing before the arbitrator at Belleville, and just previous to the hearing before the commission, he had been working at a light job in the City Foundry, at Belleville, for about six weeks and that he received four dollars for eight hours' work per day; that his work consisted of handling and carrying small pieces of iron from place to place in the foundry; that during that time he had been working six days a week in that foundry and was still working there at the time of the trial. He also testified that he suffers pain in his back when he works, and also in his hips, where he was crushed by the cage, and that he works because necessity compels him to do so, the plaintiff in error having stopped paying him compensation April 15, 1919. It also appears by admissions in the record that the plaintiff in error did stop paying him compensation on said last date because he considered him able to work and able to earn as much wages as he did before his injury. At the hearing before the arbitrator, July 9, 1919, Kleine testified that since his injury, and before that hearing, he worked five days on the rock road in Belleville, shoveling dirt with a grading gang, and

then gave it up, presumably because the work was too hard for him; that he worked for about three weeks at a factory where they make electric washing machines, sometimes working with the shipping clerk, loading machines and wringers in the cars, and sometimes shoveling dirt on the outside; that he was still working at that time at that business, receiving thirty-two and one-half cents per hour during a nine and one-half hours' work day, but that he was unable to work more than four days a week because it hurt his back. This factory where he worked operated six days a week. He also testified at that hearing that his back had improved a little within the last four or five weeks previous to that time.

It is unquestioned in this case that defendant in error was entitled to recover compensation up to April 15, 1919, when plaintiff in error ceased to make payments to him. The first contention of plaintiff in error is that there is no competent evidence in this record to sustain the award for compensation payable after April 15, 1919. This contention is based upon his further contention that the commission erred in admitting the testimony of Dr. Fullmer as an expert witness, contending that she did not qualify as an expert. Anyone who is shown to have special knowledge and skill in diagnosing and treating human ailments is qualified to testify as an expert if his learning and training show that he is qualified to give an opinion upon the particular questions in issue. The injury in question was to the spine. Dr. Fullmer testified that physicians of her school are specially educated and trained to diagnose and treat posterior and lateral derangements and ailments of the spine. That was the character of the ailment suffered by defendant in error. She was a graduate of a school of chiropractics and had practiced for four years since her graduation. Her testimony shows that she was able to detect a prominent subluxation of the spine in the lumbar region by pressure on the spine with her hands, and that she discovered

and located this condition before she learned from the patient about his injury.  It is not the province of the courts to pass upon the merits of the various systems now in use and practice in the treatment and cure of diseases, but when a physician schooled, educated and trained in any one of these particular systems qualifies as a witness by showing that he has special knowledge or skill in diagnosing and treating the particular ailment or disease which is the subject of investigation by the court, it is the duty of the court to admit his testimony as an expert.  The weight of such testimony is to be determined by the character, capacity, skill and opportunity of the witness to know and understand the matters about which he testifies and his state of mind or fairness to the parties litigant.  Dr. Fullmer was a competent witness.

The defendant in error gave testimony tending to show that he was entitled to compensation for partial incapacity to pursue his usual and customary employment after April 15, 1919.  The evidence shows that he was able to earn $11.70 per week in July, 1919, when he testified before the arbitrator, and that he was gradually improving in health at that time.  His own testimony shows that at the time he testified before the commission he was earning in a suitable employment or business $24 a week, and had been earning that amount of wages for six weeks prior thereto, or since October 24, 1919.  His earnings during that time were equal to his earnings before his injury.  Both of his physicians had advised him to do light work, for the reason that it would be beneficial and helpful in restoring him to health.  Under paragraph (*d*) of section 8 he was entitled to recover for partial incapacity compensation "equal to fifty percentum of the difference between the average amount which he earned before the accident, and the average amount which he is earning or is able to earn in some suitable employment or business after the accident."  Under the evidence in this record his partial incapacity to earn

the wages he earned before his injury ceased to exist on and after October 24, 1919. After the last named date he was not entitled to recover further compensation, and the commission should have so held.

It is argued with much earnestness by the defendant in error's counsel that we should construe the words in the above quoted part of said paragraph (*d*), "earning or is able to earn," the same as if the word "or" had been written as "and," and to then construe the whole paragraph to mean that the injured employee should still receive compensation although he is able to earn in a suitable occupation as much wages after the injury as before, if in earning those wages he is not physically able to do so without suffering pain. The word "or" is sometimes considered to mean "and," and *vice versa*, in the construction of statutes. This is not done except in cases where there is an apparent repugnance or inconsistency in a statute that would defeat its main intent and purpose. When these words are found in a statute and their accurate reading does not render the sense dubious they should be read and interpreted as written in the statute. (*People* v. *VanCleave*, 187 Ill. 125; Sutherland on Stat. Const.—2d ed.—sec. 397.) The meaning of the section in question is so obvious that we would not be warranted in interpreting the word "or" as if it had been written "and." The measure of the compensation under this paragraph is fixed at one-half the difference between the average amount earned before the accident and the amount which the employee is earning or able to earn in some suitable employment after the accident. There is no intent expressed in the statute that he should or ought to recover for pain and suffering, merely. The object of the statute is fully accomplished when the employee is in such physical condition that he is earning, or is able to earn by his own efforts, the same amount of wages as he was earning before his injury. The words "or able to earn" were evidently added to express the idea

that an employee cannot loaf or refuse to work and recover compensation if he is, in fact, physically able to earn full wages. An employee is physically able to work when he can do so without seriously endangering his health or life. Defendant in error was advised to do light work by both his physicians as an aid to complete recovery. No bad results came from his work under the evidence.

This record does not show that the commission refused to have defendant in error examined by Dr. Magnuson, the medical director of the commission. It simply shows that the attorney for the plaintiff in error asked that this be done and offered to pay all expenses, and that the attorney for the defendant in error objected. The commission is not shown to have made a ruling on the matter, and it is not, therefore, a question for review in this court.

The evidence in this record sustains the amount of the commission's award up to October 24, 1919. The order of the commission should have been that defendant in error be allowed for temporary total incapacity, as compensation, the sum of $12 per week for twenty-six and four-sevenths weeks, the first payment to begin October 18, 1918, and that he should receive a further compensation for partial incapacity at the rate of $6 per week for twenty-seven and three-sevenths weeks, to end October 24, 1919, making a total compensation of $318.85 for temporary total incapacity and $164.57 for partial incapacity. The twenty-sixth payment for total incapacity at $12 per week should have ended on April 11, 1919. The weekly payment of April 18, 1919, should have been $9.42,—$6.85 for the four-sevenths of a week at $12 per week and $2.57 for the three-sevenths of a week at $6 per week,—and all other payments thereafter should have been $6 per week. All payments are now past due, and they amount to $483.42, less the amount paid by plaintiff in error, $311.43, or $171.99. The amount paid by plaintiff in error was only sufficient to pay the weekly installments due up to April 11, 1919. Therefore, to said

total sum due to defendant in error interest at five per cent for half of the time from April 11, 1919, to October 24, 1919, should be added. Interest should also be added at the same rate from October 24, 1919, to February 15, 1921, the latter being the date judgment is entered, and the total sum due, including interest, is $185.56.

The judgment of the circuit court for the foregoing reasons is reversed in part and in part affirmed, and judgment is entered in this court in the sum of $185.56 in favor of defendant in error and against plaintiff in error. One-fourth of the costs will be taxed to plaintiff in error and the remainder to defendant in error.

<em>Reversed in part and judgment here.</em>