Lena Ritter, Administrator of Estate of William Ritter, Deceased, Appellant, v. William Nieman, Appellee.

Gen. No. 10,061.

164

Opinion filed June 14, 1946. Released for publication July 2, 1946.

THOMAS H. HICKS, of Warren, and ALBERT H. MANUS, of Freeport, for appellant.

BURRELL & BURRELL, of Freeport, and LOUIS A. NACK, of Galena, for appellee; DAVID M. BURRELL, of Freeport, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Lena Ritter, administratrix of the estate of William Ritter, deceased, brought this suit against William Nieman, defendant appellee, for damages for the benefit of the widow and next of kin of the said William Ritter, deceased. The death of William Ritter on July 8, 1942 was the result of a collision of an automobile in which Ritter was riding and a truck being driven by William Nieman on July 4, 1942 in Thompson Township, Jo Daviess County, Illinois.

The complaint filed by Lena Ritter consisted of two counts, one charging ordinary negligence and the second wanton and wilful misconduct. At the close of all the evidence, a motion was filed by the defendant

for a directed verdict on both counts which was allowed, and, after a motion for a new trial was overruled and a judgment was entered on said verdict in favor of the defendant and against the plaintiff, this appeal followed.

At about 6:15 a. m., July 4, 1942, William Ritter was riding to work in his own automobile sitting at the side of Chester Atz who was driving the car. Besides these two occupants of the front seat of the car, there were in the rear seat Glenn Smeck on the right side, George Sigafus in the middle, and his wife on his left, and on the laps of Mr. and Mrs. Sigafus were their two children a boy and a girl of the age of 7 and 4 respectively. These men were all employed at Savanna, Illinois, in an ordnance plant, and, at the time of the occurrence in question, were enroute to work. The car, which was a Ford V-8, was proceeding southward on the state aid road which commences a little southwest of Apple River and proceeds in a southerly direction. The defendant and all of the occupants of the car, with the exception of the children, testified as to the occurrence.

Orville Hess, a road maintenance patrolman, testified concerning the physical situation that existed on the highway where the accident happened, as follows: The north and south state aid road is gravel surfaced with a roadbed of 20 feet. The distance from fence line to fence line is 75 feet. Coming into this through or preferred highway from the west was a narrow road on which the defendant had lived for many years. Eight feet west of the west line of the gravel road was a large oak tree which stood exactly in the center of the east and west road, and to enter the north and south highway there were lanes going to the right and left of this tree. If one should take the road to the south of the tree and continue eastward across the highway, he would enter a lane on the east side of the state aid road which is not a public highway. The de-

fendant on the morning of the accident proposed to enter this lane to take care of some livestock. Eight feet west of the tree was a "STOP" sign of the usual dimensions. The roadway of the intersecting highways was smooth and level. At the northwest corner of the intersection, the fence rows were grown up with shrubbery and vegetation and obstructed the views of the occupants of both involved vehicles. The defendant was driving alone in his Chevrolet pickup truck. Dr. Karl B. Rieger, a practising physician and surgeon of Freeport, Illinois, testified that he attended Mr. Ritter at the St. Francis Hospital of Freeport on July 4, 1942, and that his examination revealed that he had many contusions and bruises, and that there were eleven fractured ribs, one of which had punctured a lung. Pneumonia developed from this puncture, and caused his death on July 8, 1942.

The trial court in allowing the defendant's motion for a directed verdict at the close of all the evidence, stated in his oral opinion that the plaintiff had presented no evidence that the deceased was in the exercise of due care at the time of the accident. Whether or not this determination is sound is our problem. Let us examine the testimony of the various occurrence witnesses.

Glenn Smeck testified that at the point of the collision, "All at once we was struck;" "That's all I remember about it;" "In my opinion the car was traveling about thirty-five miles per hour." He further said that after they were struck, the car rolled over several times, and that he was knocked out. He also testified that just before the accident happened, he heard Ritter say, "Look out"; that they were struck in the rear at a point just about where he was sitting; and that he was only slightly injured.

George Sigafus testified as follows: "I don't know much about the accident, to tell the truth, because it came so quick"; I didn't see much because at the time

I was getting a cigarette out of my pocket"; that the accident occurred by the big tree; that their car was about four feet north of the intersection when it was hit, traveling between 40 and 45 miles per hour; that after the impact it went from 50 to 100 feet and wound upon him, injuring his knee; and that the front bumper on Mr. Nieman's truck was broken.

Mrs. George Sigafus testified: "All that I can tell is that I seen just the front fender of the car come down the side road, and just that quickly we was hit and that's all I can remember"; that when their car was hit it was south of the tree and in the graveled portion of the roadway; that Mr. Ritter was thrown out of the car and lay 10 feet south of where it stopped.

Chester Atz testified that he had been doing the driving of the Ritter car for about 10 days; that he was quite familiar with the territory and had driven down this road many times; that on the morning in question it was daylight with a cloudy overcast; that "We were going by the intersection where the tree sets out and someone hollered just as we were passing it, that there was a car and I looked to my right and saw that there was a car there, and I thought maybe we could clear it if I stepped on the gas and just about that time the crash occurred"; that after the crash the car seemed to swerve toward the ditch and rolled over on its side and skidded down the highway about 75 feet; that their car was struck in front of the rear right fender and that their car was traveling between 40 and 45 miles per hour; that Mr. Ritter was taken to the Nieman home after the accident.

The defendant was called under section 60 of the Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060], and testified as follows: that, he is 55 years of age and has lived on the side road about one-quarter mile west of the intersection for more than 30 years; that that road is about 40 feet

wide from fence to fence; that traveling from his home to the state aid road, he went about 10 miles per hour; that he was going into a lane on the east side of the road; that there is a gate there which was open; that he had crossed this highway on the average of twice daily; "that as I drove into the state aid road that morning I was on the south side of it. There is a track for traffic on the south side of the tree, and also one on the north side of the tree which goes onto the state aid road"; that Sheriff Lloyd was at the scene of the accident shortly after the accident but I don't remember telling him that I did not stop upon entering the highway; that he stopped right there at the "stop" sign; that he looked right and left a few seconds to see whether the road was clear; that he could see up the road six to eight hundred feet; that when he stopped his truck, he was west of the oak tree about eight feet; that the front end was right at the "stop" sign, "and then I went onto the state aid road, and I hit the Ritter car from its right side, pretty well to the rear end of it. It was right in front of me. I didn't see it until I hit it"; that at the time of the impact he was traveling only two or three miles per hour. Then the defendant when called on defense, testified that from where he was sitting in his car to the west edge of the gravel road, it was 28 to 30 feet; "I seen that car coming right in front of me and I stopped. I saw the Ritter car practically just as soon as the impact"; that the weather was cloudy but the visibility was good; and that he didn't hear a horn blown. Sheriff Lloyd testified that he was called to the scene of the accident, and had a routine conversation with Mr. Nieman for the purpose of obtaining information for his report of the accident; that he asked Mr. Nieman if he had stopped and he said he didn't; that the skidmarks of the automobile showed down the road for two to three hundred feet, however he had not made a measurement of them.

The appellee argues here that the trial court erred in permitting the sheriff to testify to the admission that the defendant made at the scene of the accident that he failed to stop before entering the highway in question. To support this contention he cites par. 141, ch. 95½, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 85.173] which reads as follows: "All required accident reports and supplemental reports shall be without prejudice to the individual so reporting and shall be for the confidential use of the department except that the department may disclose the identity of a person involved in an accident when such identity is not otherwise known or when such person denies his presence at such accident. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, except that the department shall furnish upon demand of any person who has, or claims to have made such a report, or upon demand of any court, a certificate showing that a specified accident report has or has not been made to the department solely to prove a compliance or a failure to comply with the requirement that such a report be made to the department." Here there was no such report offered in evidence. The statute specifically enjoins the use of the report in a civil or criminal trial. For this court to hold that a party making such report could not testify to "admission against interest" made by a party to an accident, would extend the language of the statute to include prohibition not contained therein. If on this trial appellant had sought to introduce in evidence the sheriff's report, it would have been inadmissible under this statute. We do not believe the trial judge erred in this ruling.

It is the contention of the defendant appellee that since the driver of the car, Atz, did not look and that deceased failed to see the approach of the defendant's truck in due time to give him ample warning, that this constituted contributory negligence, and bars recovery

on the first count of the complaint. It is also his contention that in the event that defendant appellee is determined to be guilty of wanton and wilful misconduct, that likewise Atz and Ritter were guilty of such misconduct, and that such misconduct barred recovery on the second count. It is seriously argued by counsel for appellee that the operators of the Ritter car were just as much duty bound to see and have regard for the traffic approaching on the side road as Nieman was to observe and have regard for the traffic on a through highway. To support his view, there is cited the following cases; *Kirchoff v. VanScoy*, 301 Ill. App. 366; *Walker v. Illinois Commercial Tel. Co.*, 315 Ill. App. 553; *Dee v. City of Peru*, 343 Ill. 36. We deem it unnecessary to burden this opinion with a detailed analysis of each of those cases, but suffice it to say that not one of them sustains appellee's contention. For instance, in the *Kirchoff* case, there was not a preferred highway or street involved.

It must be borne in mind that Ritter's car was proceeding at a reasonable rate of speed on a through highway, on the proper side of the road, and when it had almost cleared the intersection, it was struck by the defendant's truck. The defendant makes the admission that he did not see the Ritter car until he struck it. There is evidence in the record that the defendant did not stop before entering the intersection, and this charge of the defendant's misconduct is sustained by the testimony of Mrs. Sigafus who said she saw the fender of his truck coming down the road and "just that quickly we was hit." It certainly is reasonably inferable from that statement that defendant's truck came into the intersection suddenly and without stopping.

The defendant testified that he did stop and that he looked both ways, and that he could see down the road six to eight hundred feet. Where was the Ritter car during this time? Why could he not see

it? Our courts have repeatedly held since the pronouncement in the case of *Greenwald v. Baltimore & O. R. Co.*, 332 Ill. 627, that the law does not tolerate the absurdity of one saying he looked and did not see when there is nothing to prevent it. What is the purpose of a stop sign? Certainly, it does not signify that a motorist should stop, and then blindly proceed through a protected intersection without determining that he can do so with reasonable safety. The operator of a motor vehicle, when he stops at a preferred highway, should ascertain if he can proceed safely across such highway. If he can not, he should not enter it. Merely stopping some place near a stop sign does not necessarily discharge one's duty. There is no virtue in stopping at a place when one can not see. A stop sign is a challenge to motorists to stop at a point where, by the use of one's faculties, one can definitely ascertain if he can safely proceed into the protected thoroughfare. Using the language of the *Greenwald* case, *supra*, we say that the law will not tolerate the absurdity of a motorist saying that he stopped at a through street but did not see another vehicle with which he collided as he proceeded into the intersection, when it is so obvious that if he had stopped and looked he would have seen the vehicle.

There was testimony that Ritter yelled, "Look out," just before the defendant's truck collided with their car. Can it not be reasonably inferred from this that the deceased was looking out for traffic on this side road? The deceased had traveled this route for some time, and knew that he was using a preferred highway; and it is altogether possible that he saw the defendant's truck before he yelled, but had the right to assume that the truck would stop and permit them to pass unharmed.

We must here recognize the well established rule—that in deciding a motion to instruct the jury to find the defendant not guilty, it is the duty of the

court to consider the evidence in its most favorable aspect to the plaintiff, together with all reasonable inference arising therefrom. It has been repeatedly held that the question of contributory negligence is pre-eminently a question of fact for the jury. In the case of *Thomas v. Buchanan,* 357 Ill. 270, the court said "The question of due care on the part of plaintiff's intestate is always a question of fact to be submitted to the jury whenever there is any evidence in the record, which, with any legitimate inference that may reasonably and legally be drawn therefrom, tends to show the exercise of due care on the part of the deceased." One of the more recent cases that deals with this question is that of *Blumb v. Getz,* 366 Ill. 273. The court said in this case, "The question of contributory negligence is one which is pre-eminently a fact for the consideration of the jury. It cannot be defined in exact terms and unless it can be said that the action of a person is clearly and palpably negligent, it is not within the province of the court to substitute its judgment for that of a jury which is provided for the purpose of deciding this as well as other questions in the case." Also, the court said therein, "In considering the question of due care on the part of plaintiff's intestate, it is well to remember that this cannot always be shown by direct proof but that the evidence as adduced by the plaintiff should disclose facts from which it may be reasonably inferred that the plaintiff's intestate was in the exercise of due care." The appellant cites two Michigan cases where the factual situation is quite similar to the one under consideration. In *Slivensky v. Wayne,* 307 Mich. 443, 12 N. W. (2d) 331, the plaintiff testified that while traveling on a through highway did not look to the right or diminish his speed as he approached the intersection of that highway with a side road. The plaintiff's view was obscured by growing corn and some signs. The court there held that even if plaintiff had looked for traffic

approaching from the side road, he could not have seen a car. coming in from the side road in time to avoid a collision with it. In the other case found in *Rife v. Colestock,* 297 Mich. 194, 297 N. W. 238, the court stated that the driver on a preferred street who had not looked for traffic approaching from the intersecting street had the right to assume that any driver approaching from the intersecting street would obey the law by stopping and that the question of plaintiff's contributory negligence was a question of fact for the jury.

█ █ We are of the opinion that it was a question of fact for the jury to determine whether Atz and Ritter were in the exercise of due care just before and at the time of the accident. We are also of the opinion that the court erred in not submitting to the jury the issues raised in the second count of the complaint, namely, whether or not the defendant was guilty of wanton and wilful misconduct. If the witnesses for the plaintiff are to be believed, it can be fairly inferred that the defendant drove through a stop sign without stopping and looking, and into an intersection where he struck an automobile that he didn't even see before he struck it. The defendant had crossed this intersection for many years and knew of the existence of the stop sign, and that this was a place of danger. Whether or not such conduct indicated a reckless disregard for the safety of others was a question of fact properly to be submitted to a jury. *Brown v. Illinois Terminal Co.,* 319 Ill. 326; *Schmidt v. Anderson,* 301 Ill. App. 28.

It is the considered opinion of this court that this case should be submitted to the jury on both counts and it is reversed and remanded for that purpose.

*Cause reversed and remanded.*