Thomas Kubajak, Plaintiff-Appellee, v. Maurice L. VerBrugge and Carl Watson, Defendants-Appellants.

Gen. No. 64-39.

Third District.

May 13, 1965.

Schoede, Schoede & Kavensky, of Rock Island (Harrison H. Kavensky, of counsel), for defendants-appellants.

Reidy, Katz, McAndrews, Durkee & Telleen, of Rock Island (Isador I. Katz, of counsel), for plaintiff-appellee.

ALLOY, P. J.

This is an appeal from a judgment of the Circuit Court of Henry County entered on a general verdict returned by a jury in the sum of $8,000 as a result of an action for personal injuries filed on behalf of plaintiff Thomas Kubajak against defendants Maurice L. Ver Brugge and Carl Watson. In addition to a count which charged negligence, another count charged the defendant Maurice L. VerBrugge with willful and wanton misconduct while driving a truck as the agent of defendant Carl Watson. As a result of a special interrogatory submitted by Defendants, the jury made a special finding that the defendant Maurice L. Ver Brugge was guilty of willful and wanton misconduct at and immediately prior to the collision in question, proximately causing plaintiff's injuries.

The evidence discloses that plaintiff was proceeding south on Illinois State Route No. 82, a through highway, toward Geneseo, Illinois, at about 60 miles per hour. Defendant VerBrugge was driving a 1953 Chevrolet pickup truck north on Route 82, which was a two-lane concrete north-south road. After the said defendant had pulled off to the shoulder, to permit a fire engine with a red light blinking to pass, he

346

then proceeded back onto the highway in an attempt to make a left turn onto a road known as the Billy Wolf Road. While in the northbound lane of the State Route he said he looked to his right and saw the plaintiff's southbound vehicle approximately 300 feet away. The defendant admitted that the cars he had permitted to pass to the north may have cast a shadow on the route and prevented him from seeing plaintiff's car approaching from the north. The evidence shows that he, nevertheless, started off the east shoulder to make a turn across the highway; that he apparently thought there was a clear road north on the highway for a half a mile but he did not look again to the north until he was practically in the center of the highway when he looked again to the north and saw plaintiff's car approaching. He then stopped admittedly some place in the south lane of the route on which the plaintiff was proceeding and the collision occurred between the vehicles. Plaintiff, upon seeing defendant, applied his brakes prior to the impact and continued in his own lane of traffic prior to the impact. After the accident defendant pleaded guilty to the charge of failure to yield the right-of-way without benefit of counsel.

There was a conflict in the evidence as to the details of the manner in which the automobiles were handled, but for our purposes it is not necessary to detail such evidence. Plaintiff has suffered great pain as the result of the accident for a period of three years, his disability affected his capacity to do his work properly, and after he had been discharged from treatment, he applied for work in his field of endeavor but was unable to procure work. There was evidence that a fall on the ice in February 1963, a year and a half after the accident, probably resulted from injuries received in the collision in question and that the injury he then sustained as a result of the fall

347

could be permanent. While the plaintiff was never hospitalized as a result of the automobile accident, the record shows that he suffered a scalp wound requiring three sutures, he had two broken ribs, and a back sprain. He continued to have difficulty up to the time of trial. The record indicated that the actual claimed loss of doctors charges and hospital costs and the loss of normal earnings for the year preceding the trial aggregated approximately $8,000.

On appeal in this court defendants contend that the trial court erred in failing to strike Count II of plaintiff's complaint on motion of defendants made before the trial commenced, on ground that the count did not state a cause of action, and also, after the close of all the evidence, on the ground that the evidence did not as a matter of law support the willful and wanton count; (2) that the court erred in giving certain plaintiff's instructions over defendants' objections; (3) that the court erred in allowing the jury to consider punitive damages over defendants' objections, when punitive damages were not specifically requested in the prayer for relief in plaintiff's complaint; (4) that the verdict was against the manifest weight of the evidence and was so excessive as to evidence passion, prejudice and ill will on part of the jury or that the jury considered punitive damages in returning the verdict.

■■ Courts of review in this state, in determining whether conduct was willful or wanton when so found by a court or jury, may not consider mere conflicts of evidence and the weight or preponderance of the evidence or the credibility of witnesses, but must essentially determine whether the evidence substantially supports the verdict (Hering v. Hilton, 12 Ill 2d 559, 147 NE2d 311; Augustine v. Stotts, 40 Ill App 2d 428, 189 NE2d 757). The circumstance, in the pres-

ent case, that defendant VerBrugge could have clearly ascertained whether he could safely pass across the road and his contention that he looked and did not see the vehicle of plaintiff with which he collided, while proceeding into the intersection directly into the path of the vehicle, when from the evidence it was obvious if he had looked he could have seen, itself could be treated as an inconsistent absurdity the court or jury can reject (Ritter v. Nieman, 329 Ill App 163, 67 NE2d 417; Hering v. Hilton, 12 Ill2d 559, 147 NE2d 311).

The jury under such conditions has the right to determine whether or not such action was willful and wanton misconduct and the court on review should not as a matter of law ursurp the jury's functions in this regard. In addition thereto, in the instant case the answer of the jury to the special interrogatory as to the utlimate material fact that the conduct of the defendant was willful and wanton was binding on the trial court unless the finding was not supported by any competent evidence or was against the manifest weight of the evidence, and where such finding is consistent with the general verdict, the finding is controlling (Todd v. Borowski, 25 Ill App2d 367, 166 NE2d 296). The action of the trial court, therefore, in refusing to strike Count II or to direct a verdict thereon, on the basis of the record, was justified. The allegations of the complaint in Count II in specifically charging that Defendant, with willful and wanton disregard of the approach of plaintiff's vehicle, then and there, in a willfully wanton and negligent manner, caused the vehicle to be operated from the east side of the highway directly across the road in a westerly direction and into the path of the oncoming automobile, was a sufficient charge of willful and wanton misconduct and the motion to dismiss was properly denied prior to trial.

The one issue raised by defendants on appeal in this court with which this court has been most concerned, on review, relates to the giving of plaintiff's Instruction No. 13 with reference to punitive damages. Instruction No. 13 referred to is a standard IPI Instruction No. 35.01 which specifically charged "If you find that a defendant was guilty of wilful or wanton conduct which proximately caused the injury to plaintiff and if you believe that justice and the public require it, you may, in addition to any damages to which you find the plaintiff entitled, award plaintiff an amount which would serve to punish the defendant and to deter others from the commission of like offenses." Defendants contend that since punitive damages were not prayed for specifically in Count II of the complaint, that, therefore, under the provisions of 1963 Illinois Revised Statutes, chapter 110, section 34, when defendant objected to such instruction and the instruction was given over defendants' objection, that the court committed reversible error. Under the provisions of said section 34, chapter 110 of the Illinois Revised Statutes, it is specifically provided that "every complaint and counterclaim shall contain specific prayers for relief to which the pleader deems himself entitled. Relief, whether based on one or more counts, may be asked in the alternative. Demands for relief which the allegations of the pleadings do not sustain may be objected to on motion or in the answering pleading. Except in case of default, the prayer for relief does not limit the relief obtainable, but where other relief is sought the court shall, by proper order and upon terms that may be just, protect the adverse party against prejudice by reason of surprise. In case of default, if relief beyond that prayed in the pleading to which the party is in default is sought, whether by amendment, counterclaim, or otherwise, notice shall be given to the defaulted party as provided by rule."

■ We are conscious of the principle as stated in the case of Klehm v. Klehm, 41 Ill App2d 423, at 427, 191 NE2d 69, "It is fundamental in our system of jurisprudence that a defendant is entitled to know the precise charge that is laid at his door, the nature and the extent of the relief sought, the property that is or may be affected, and an opportunity to be heard." We are also aware that a plaintiff, even though he contends that defendant was guilty of willful and wanton misconduct, may elect not to claim or demand punitive damages. The specific problem which is posed for our determination, however, is whether the giving of the instruction in view of the record and the jury verdict in the instant case is such as to require a reversal.

■ From the record in this cause, it is apparent that defendants did not at any time before or during the trial specifically suggest the application of the statute referred to (Ill Rev Stats c 110, § 34) or suggest any specific measures which the court could take to protect defendants as against surprise if defendants were in fact surprised. The statute under consideration by its express terms provided: "Except in case of default, the prayer for relief does not limit the relief obtainable, but where other relief is sought, the court shall, by proper orders and upon terms that may be just, protect the adverse party against prejudice by reason of surprise." The jury in the case before us returned a verdict of $8,000. Damages sustained by the plaintiff were obviously at least as great as the amount of the verdict on the basis of doctor and hospital charges and loss of normal earnings for the year preceding the trial alone. It is apparent from the verdict that no punitive damages were in fact awarded. Section 34 of the Practice Act under consideration was obviously designed to produce the result that technical forms of pleading, if in fact

351

 ◦

there is no prejudice, should not result in an arbitrary reversal or rejection of the verdict of a jury or the finding of a court simply because the relief had not been specifically prayed for (Swofford v. Swofford, 327 Ill App 55, 63 NE2d 615; Kaifer v. Kaifer, 286 Ill App 433, 3 NE2d 886).

 We have some basic misgivings about a result which may potentially include elements of damage which were not in fact requested and are not by our decision here implying that a request for a certain sum of money would justify damages under any theory which may later be devised, either in the course of the trial or thereafter to sustain the award. We are also conscious of the obligation of the court of review to determine whether in fact, applying the law and legal and equitable principles, a reversal of a trial court would be justified solely on the premise that there had been an omission to specifically request punitive damages, where an instruction of the type before us was in fact given and a verdict of the character returned in this case was in fact returned. We recognize that the sounder practice by far would have been for plaintiff to pray for an award of punitive damages if such an instruction were to be submitted. Similarly, if the verdict in its amount had been substantial so that, on a reasonable review of the record it was felt that the jury did in fact make an award of punitive damages, we would be moved to remand for a new trial. Under the facts as established in this record, however, we do not believe that it is consistent with the function of a court of review to reverse the result of the trial court simply because we have noted procedural errors which might, in a proper case, justify such reversal. We have accordingly concluded, therefore, that the giving of the instruction did not, under the facts in the record and in view of the results, constitute reversible error.

██ There was likewise an objection to an instruction on damages which included a reference to "present cash value of time and earnings reasonably certain to be lost in the future." The objection is made that there was no definition of the words "present cash value." There was no tender of a definition of that type by either party. As we have pointed out, the verdict of the jury apparently did not include any amounts for future loss of earnings. In view of the record it is obvious that the jury could hardly have been moved to a consideration of any unusual reward for any future loss of earnings in view of the result of the trial court. Giving of such instructions without a specific definition of "present cash value" under the facts in the record and in view of the result in the trial court was not reversible error. We also find no basis whatsoever in the record to support the contention that the verdict was so excessive as to evidence passion, prejudice or ill will on the part of the jury as against the Defendants.

This case, as is sometimes true in other cases, was not wholly free from error. In reviewing a cause on appeal, however, it is not our function to seek out only elements which may constitute error, if such elements or procedures are not in fact of such character as to justify or require reversal (People v. Storer, 329 Ill 536, 161 NE 76; Moore & Co. v. Champaign Nat. Bank, 13 Ill App2d 232, 246, 141 NE2d 97). We have, therefore, concluded that while the record in this cause is not free from error, the errors, on the basis of the record, do not justify or require reversal and accordingly the judgment of the Circuit Court of Henry County will be affirmed.

Affirmed.

STOUDER and CORYN, JJ., concur.