JOHN YATES *et al.*, Plaintiffs-Appellants, v. ROBERT D. BROCK, Defend-ant-Appellee.

Fourth District   No. 4—89—0160

Opinion filed November 9, 1989.—Rehearing denied January 8, 1990.

James Walker, Ltd., of Bloomington, for appellants.

David E. Jones, of Thomas & Hinshaw, Culbertson, of Peoria, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by the plaintiffs John Yates and D. Merold Yates from a judgment entered in the circuit court of McLean County in favor of plaintiffs against defendant Robert D. Brock. Plaintiffs brought an action to recover damages for personal injuries to John Yates, a minor, and to recover lost earnings of and medical expenses incurred by his father, D. Merold Yates, all allegedly resulting from a collision between vehicles driven by the younger Yates and defendant. The jury awarded John Yates $9,666.67 and his father $9,628.67, after reducing the total amount of damages by 33⅓% for negligence attributable solely to plaintiff which was a proximate cause of plaintiff's injury or damage.

The evidence at trial establishes the collision occurred on Main Street in Bloomington, Illinois, near its intersection with Baker Street, on December 6, 1985, at approximately midnight. At the time of the incident, defendant was driving a Nissan pickup truck. Defendant is from Memphis, Tennessee, and was in Bloomington temporarily working on the construction of a motel. Defendant left Memphis about 3 a.m. the day before, stopped in another town to pick up a foreman, then drove through a snowstorm in Illinois to arrive in Bloomington around 2 or 3 a.m. the day of the collision. He arose to get ready for work at 7 a.m., began work at 7:15 a.m. and worked until 10 p.m. It was after work that he and his foreman Robert Frost went to look for a hamburger place. After leaving the restaurant, he drove out of the parking lot of a restaurant then known as the Sundown Lounge and turned right onto Main Street. In doing so, he drove the truck briefly in the right lane of Main Street and then in the center lane. When he first turned onto Main Street, defendant knew it was a one-way street, but was not sure in which direction. Although he was looking for something to indicate whether he was traveling in the correct direction, he did not notice the street signs were facing away from him, nor did he notice the traffic signal at one intersection did not face traffic from the direction he was approaching the intersection. Main Street has three lanes. There was no other traffic on Main at that time. Prior to pulling into the restaurant parking lot, however, defendant had seen vehicles traveling northbound on Main Street. When he drove his truck onto Main Street, the truck's headlights were on dim. After about a block, he moved the truck into the center lane. He drove about six blocks in the center lane. Prior to the collision, he pulled the truck back into the

right-hand lane and stopped. He had been driving this truck at 30 to 35 miles per hour. He realized he was driving the wrong way on a one-way street when a car approached in the opposite direction. It took about one-half block to pull the truck over to the right and stop. Plaintiff's vehicle then came over a hill in the northbound direction in the same lane as defendant had stopped his truck and the collision occurred. Only three or four seconds elapsed between the time the truck came to a stop and the collision occurred. Defendant flashed his lights once prior to the collision. According to defendant, he could see Yates in the car with his girlfriend and that they were looking at each other. Defendant testified that when he approached the Yates vehicle, Yates said he had been drinking. Defendant also had been drinking. He could smell whiskey in the car and on Yates' breath. Yates' girlfriend removed what appeared to be a half-gallon bottle of whiskey, cups, ice, and Coke. Defendant did not mention this to the police because he did not want to get the occupants of the other vehicle in trouble. He believes Yates was intoxicated. It was stipulated defendant was intoxicated. He pleaded guilty to the charge of driving while under the influence.

Annetta Hinthorne, the passenger in Yates' Volkswagon at the time it collided with the defendant's Nissan pickup truck, stated Yates had not been drinking alcoholic beverages from the time he met her at a dance at about 10:30 p.m. to the time of the collision. She believed defendant and his passenger were intoxicated. The officer who investigated the collision, Mike Jordan, also believed defendant's passenger was intoxicated. A passer by who stopped, David Geertz, also testified he believed defendant and his passenger were intoxicated. Geertz saw defendant drive out of the parking lot onto Main Street. Geertz's vehicle was traveling north on Main Street, and Geertz flashed his lights at defendant to make defendant realize he was going the wrong way. Looking in the rearview mirror to observe if defendant realized this, Geertz observed the collision. The passenger in Geertz's vehicle, Jim Upton, could not formulate an opinion as to defendant's intoxication. Another police officer at the scene, Dan Katz, observed the defendant and issued the DUI citation. A blood sample was taken from defendant at the hospital. Defendant's blood-alcohol concentration was 0.188 grams per decaliter.

John Yates testified concerning the circumstances of the collision. He testified he did not have anything alcoholic to drink that evening and there was not a half-gallon of whiskey in his car. He was glancing at the used car lots as he passed them. When he first saw the small pickup truck in front of him, there was not sufficient time to react to

avoid the collision. He does not remember braking or seeing the truck's headlights. The view is unobstructed and the road is straight, with a slight decline. There was nothing obstructing his view for the last few blocks prior to the collision.

Defendant's passenger, Robert Frost, testified he is a foreman for the electrical company owned by defendant's father. He recalls defendant having three or four beers. After the car flashed its lights at defendant, it took five or six seconds for defendant's vehicle to come to a stop. Frost is not sure if the pickup truck came to a complete stop, but defendant was attempting to stop the vehicle. He did not talk to Yates, and he saw the girl in the car run off screaming, but he did not see her carrying anything. He admitted he was intoxicated, and this may be part of the reason he was unable to remember some of the circumstances.

In closing arguments, defendant's counsel noted there was no evidence Yates was intoxicated, he had not pleaded Yates was intoxicated, and he did not argue Yates was intoxicated. Instead, he suggested Yates and his passenger had gone to get Cokes to mix drinks and they were in the process of doing so when the accident occurred, explaining why Yates did not see the other vehicle in time to avoid the collision.

■ The first issue to consider is whether a defendant's responsibility for damages caused by defendant's wilful and wanton misconduct may be reduced by having the jury compare plaintiff's negligence with the defendant's wilful and wanton misconduct and whether the instructions given for such comparison were proper. In *State Farm Mutual Automobile Insurance Co. v. Mendenhall* (1987), 164 Ill. App. 3d 58, 517 N.E.2d 341, this court recently considered the question of whether plaintiff's negligence should be compared to a defendant's wilful and wanton misconduct and decided that such a comparison is appropriate. Plaintiffs attempt to persuade this court to abandon the holding in *Mendenhall*. However, plaintiffs cite no new cases for this court's consideration. Nor do plaintiffs distinguish *Mendenhall* from the case at bar or attempt to convince the court that public policy has shifted since this court's earlier decision such that the court should retreat from the holding in *Mendenhall*. Instead, relying on cases in existence at the time *Mendenhall* was decided, plaintiffs urge this court to decide the earlier decision was wrong. However, we refuse to abandon this court's decision in *Mendenhall*.

The second part of this issue, concerning the proper instruction to be given, was not addressed in *Mendenhall*. In the instruction conference, plaintiffs argued the instructions should not be given because negligence of plaintiff cannot properly be compared to defendant's wil-

ful and wanton misconduct. The trial court refused plaintiffs' instruction No. 11 and gave defendant's No. 13 because plaintiffs' instruction did not include the issue of plaintiff's "contributory negligence."

■ Plaintiffs' brief focuses only on Illinois Pattern Jury Instructions, Civil, No. A45.05 (2d ed. Supp. 1986) (IPI Civil 2d), and suggests that the language therein requires plaintiff's negligence be compared to all other "negligence," and since defendant's conduct was wilful and wanton, the jury would end up comparing plaintiff's negligence only to plaintiff's negligence. Plaintiff apparently suggests the term "fault" be substituted for "negligence." We reject plaintiffs' suggestion. "Negligence" and "wilful and wanton" are defined in the Illinois Pattern Jury Instructions and were defined for the jury. Here the jury considered "the total combined negligence of the plaintiff and the wilful and wanton conduct of the defendant" before assigning a percentage to plaintiff's negligence. It does not appear the jury was confused. In the jury verdict form, the jury found the percentage of plaintiff's negligence which proximately caused plaintiff's injury and damage to be 33⅓%. Had the jury resorted to the semantics used by the plaintiffs on appeal, *i.e.*, comparing plaintiff's negligence with only plaintiff's negligence, then the percentage should have been 100%. It seems clear the jurors understood they were comparing the relative fault of the parties.

■ The remaining issue to consider is whether plaintiffs were not entitled to recover punitive damages because no prayer for such relief was included in the complaint. The issue here is not, as defendant suggests, whether the trial court properly determined, as a matter of law, that this case was not a proper case for punitive damages. While it is the function of the trial court to determine, as a matter of law, whether a case is a proper case for punitive damages (*Loitz v. Remington Arms Co.* (1988), 177 Ill. App. 3d 1034, 532 N.E.2d 1091), that issue was never raised in the trial court and was not the reason for the trial court's decision. Punitive damages may be awarded where the defendant's acts are done wilfully or with such gross negligence as to indicate a wanton disregard of the rights of others. *Loitz*, 177 Ill. App. 3d at 1057, 532 N.E.2d at 1105.

In this case, the first time the question of punitive damages arose was during *voir dire*. Defense counsel objected on the basis of surprise and because of the potential for the conflict of interest it might cause because defense counsel was retained by defendant's insurance company. The plaintiffs' attorney advised the court there was no motion for leave to amend pending and apparently relied, as plaintiffs do on appeal, on the theory that punitive damages need not be specified in

the prayer for relief as long as the facts alleged and the proofs made warrant the assessment of punitive damages. The trial court decided any motion to amend would be denied as untimely, and since no issue of punitive damages existed, plaintiffs' attorney would not be allowed to discuss punitive damages with prospective jurors.

Plaintiffs tendered an instruction, based on IPI Civil 2d No. 35.01, which would have informed the jury it was permissible to award damages to punish defendant and to deter others from committing like offenses. The judge refused the tendered instruction on defendant's objection that this question had already been decided. There was no further discussion of the issue at that time.

■ Plaintiffs argue simply that they did not need to allege punitive damages in order to recover punitive damages. This is apparently no longer the law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—604.1.) However, the statute modifying the law applies only to causes of action accruing after November 25, 1986. Ill. Ann. Stat., ch. 110, par. 2—604.1, Historical and Practice Notes, at 13 (Smith-Hurd Supp. 1989).

In *Kubajak v. VerBrugge* (1965), 59 Ill. App. 2d 344, 207 N.E.2d 344, the court stated a preference that the defendant not be surprised by a claim for punitive damages. Subsequently, the decision of *People ex rel. Scott v. Police Hall of Fame, Inc.* (1978), 60 Ill. App. 3d 331, 376 N.E.2d 665, relied on *Kubajak* to reverse an award of $150,000 punitive damages when a specific request for punitive damages was not included in the complaint even though the complaint charged the defendants with egregious conduct.

As this court noted in *Loitz v. Remington Arms Co.* (1988), 177 Ill. App. 3d 1034, 532 N.E.2d 1091, the issue of punitive damages involves presentation of evidence which is distinct from and often unrelated to the issues of liability and actual damages and which might prejudice a defendant with regard to the jury's consideration of the questions of liability and special damages, including, for example, defendant's ability to pay punitive damages. Where the question of punitive damages is first raised the morning of trial, it seems likely defendant was unprepared to address the issues raised thereby. Since plaintiffs had not prayed for punitive damages in their complaint, the trial court properly ruled the question of punitive damages could not be raised at trial. Accordingly, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

McCULLOUGH, P.J., and GREEN, J., concur.