ROBIN YOUNG *et al.,* Plaintiffs-Appellees, v. JOHN HUMMEL, Defendant-Appellant.

First District (5th Division) No. 1—89—3472

Opinion filed June 28, 1991.

Beermann, Swerdlove, Woloshin & Barezky and Parrillo, Weiss & O'Halloran, both of Chicago (Alvin R. Becker, Jon R. Parrillo, Joel M. Horwich, and Timothy M. Kelly, of counsel), for appellant.

Robert A. Rosin & Associates, Ltd., of Chicago (Robert A. Rosin, of counsel), for appellees.

JUSTICE McNULTY delivered the opinion of the court:

This is an appeal from judgment entered in the circuit court of Cook County in favor of plaintiffs Robin Young and John Young against defendant John Hummel. Plaintiffs filed a two-count complaint against defendant for injuries and property damage allegedly resulting from a collision between vehicles driven by Hummel and Robin Young. The jury awarded plaintiffs a total of $77,411. Defendant is appealing on the basis that the jury was improperly instructed on the issue of punitive damages and awarded excessive compensatory damages.

The relevant facts are as follows. On April 19, 1979, John Hummel collided into the rear of plaintiffs' vehicle as both vehicles traveled southbound on York Road in Elmhurst. Robin Young was driving and John Young was a passenger in her car. After impact, the defendant's car continued to push the plaintiffs' car for more than a block. Once the vehicles were separated, defendant's automobile struck the left rear corner of Robin Young's vehicle a second time. After the second impact, defendant fled the scene of the collision. An officer who responded to the collision found that the license plate from the front of defendant's vehicle had been embedded into the rear of Robin

Young's car. The officer traced the license plate to John Hummel and discovered both the vehicle and Hummel at his home.

Following the collision, Robin Young was taken to Elmhurst Hospital and treated for a laceration above her eye and given a cervical collar. At the time of the accident, Robin was employed as a waitress at Jo-Jo's Restaurant earning $400 a week. She remained off work for two weeks after the accident. When she returned to work, she worked part time as a hostess rather than as a waitress since her injuries prevented her from carrying food trays. Even 10 years later, at the time of trial, Robin testified that she was still unable to either carry food trays or work full time.

Dr. Engelhart, a licensed chiropractor, testified that he treated Robin Young for musculoskeletal disorders which she suffered as a result of the collision. This treatment involved chiropractic adjustments of her spine which consisted of straightening the spine. Robin had seen Dr. Engelhart in excess of 150 times over the 10-year period between the accident and the trial. Throughout her treatment with Dr. Engelhart, Robin complained of headaches, pain in the shoulders, neck, arms, back and hips.

Robin testified that at the time of trial, she was still experiencing soreness, stiffness and headaches. Furthermore, she was still unable to sit comfortably for long periods of time, or lift heavy objects. She continues to see Dr. Engelhart in order to receive some relief from these problems.

The jury returned a verdict in favor of both plaintiffs and awarded them a total of $77,411. Plaintiff Robin Young was awarded a total of $62,911 for compensatory damages and $12,000 for punitive damages. Plaintiff John Young was awarded a total of $500 for compensatory damages and $2,000 for punitive damages. Final judgment was entered upon the verdict.

Defendant initially maintains that the trial court improperly instructed the jury on the issue of punitive damages when such damages were not prayed for in the complaint. Defendant contends that he was unaware that plaintiffs were even seeking punitive damages until they were mentioned by plaintiff's counsel during the jury instruction conference.

Since defense counsel was retained to defend Hummel by his liability insurer, and under Illinois law there can be no coverage for punitive damages under a liability policy like the one issued to Hummel (*Beaver v. Country Mutual Insurance Co.* (1981), 95 Ill. App. 3d 1122, 420 N.E.2d 1058), defendant contends that he was denied a fair trial by virtue of the fact that there was a conflict of interest over the is-

sue of punitive damages. Defendant contends that had defense counsel been aware of the potential imposition of punitive damages, he would have not only conducted the trial much differently, but he would also have advised Hummel to consider retaining independent counsel. In addition, defense counsel would have made a specific disclosure to Hummel that an award of punitive damages would not be covered under his policy of liability insurance.

■ A defendant is entitled to be apprised of the precise charge brought against him, the nature and extent of the relief sought, and the property which may be affected. He must also be given an opportunity to defend the charge. (*Klehm v. Klehm* (1963), 41 Ill. App. 2d 423, 191 N.E.2d 69.) The plaintiffs' complaint contains two counts. It is undisputed that count I sought compensatory damages for defendant's alleged negligence. Count II sought damages for defendant's alleged willful and wanton misconduct, but it is unclear whether the damages sought were compensatory or punitive.

Although the complaint did not specifically request punitive damages, the trial court allowed plaintiffs to seek such damages, apparently based on the belief that the presence of a willful and wanton count in a complaint automatically results in a claim for punitive damages. This position is, however, inconsistent with Illinois law. In *Kubajak v. VerBrugge* (1965), 59 Ill. App. 2d 344, 207 N.E.2d 344, the court determined that the giving of a punitive damages instruction where plaintiff alleged willful and wanton misconduct, but did not pray for punitive damages, did not warrant a reversal since the amount of the verdict indicated that punitive damages had not in fact been awarded. The court did, nonetheless, state a preference that the defendant not be surprised by a claim for punitive damages. Subsequently, the decision in *People ex rel. Scott v. Police Hall of Fame, Inc.* (1978), 60 Ill. App. 3d 331, 376 N.E.2d 665, relied on *Kubajak* to reverse an award of punitive damages where the complaint charged the defendants with egregious conduct but failed to include a specific request for punitive damages in its prayer for relief.

More recently, in *Yates v. Brock* (1989), 191 Ill. App. 3d 358, 547 N.E.2d 1031, the court held that since plaintiffs had not prayed for punitive damages in their complaint, the issue of punitive damages could not be raised at trial. The complaint in *Yates* alleged that defendant was guilty of willful and wanton misconduct by driving while intoxicated, but did not contain a specific prayer for punitive damages. The question of punitive damages first arose during *voir dire*. Defense counsel objected on the basis of surprise and because the possible award of punitive damages placed him in conflict with his

client since he was retained by the client's insurance company. The court concluded that where the question of punitive damages is first raised the morning of trial, the defendant is likely unprepared to address the issues raised and, therefore, under such circumstances the question of punitive damages could not then be raised at trial. *Yates*, 191 Ill. App. 3d at 363.

At first glance, defendant's claim of surprise in the instant case would appear to be even more compelling than that presented in *Yates* in light of the fact that the question of punitive damages here was not raised at the start of the trial but rather at the instruction conference at the end of trial. As defendant points out, a review of the record indicates that defendant may have had some knowledge that punitive damages were at issue in the willful and wanton claim. At the commencement of the trial, plaintiff presented a motion *in limine* to bar reference to the pecuniary position of either plaintiffs or the defendant. Defense counsel objected to the motion stating that "There is a willful and wanton Count and I think that is relevant at least to the defendant." Based on this comment, we could reasonably conclude that defense counsel was aware that defendant's pecuniary status was relevant based on the fact that plaintiffs were seeking punitive damages. On the other hand, we would be equally justified in concluding that since plaintiffs sought to exclude evidence of the pecuniary position of either the plaintiffs or the defendant, defendant was led to believe that plaintiffs were not seeking punitive damages.

■ Accordingly, while we can not definitively ascertain whether defendant was indeed surprised by the request for punitive damages, we do know that the plaintiffs' complaint did not specifically request punitive damages. As a result of their penal nature, punitive damages are not favored in the law, and, accordingly, courts must take caution to see that punitive damages are not improperly or unwisely awarded. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) Adherence to this standard of caution leads to the conclusion that because we cannot unequivocally determine whether the defendant had actual knowledge that plaintiffs were seeking punitive damages, the portion of the verdict awarding punitive damages against defendant should be reversed.

Defendant next contends that the jury awarded excessive compensatory damages to Robin Young. Defendant maintains that the trial court improperly instructed the jury that it could consider the permanency or future pain of Robin's injury. Although defense counsel objected to the instruction on the basis that there was no medical testimony that Robin Young's injury was permanent so as to cause any

future pain and suffering, the trial court gave the instruction based on Robin's testimony as to her own condition. Defendant maintains that it was reversible error for the trial court to instruct the jury on future pain and suffering when there was absolutely no medical evidence introduced to indicate that Robin's condition was permanent or that she would experience pain in the future.

■ "Some evidence" as to plaintiff's future pain and suffering warrants the giving of a jury instruction. (*Onion v. Chicago & Illinois Midland Ry. Co.* (1989), 191 Ill. App. 3d 318, 547 N.E.2d 721.) As the court in *Onion* noted, Illinois case law provides little guidance as to the degree of proof that constitutes "some evidence" required for a pain and suffering instruction. In *Harvey v. Norfolk & Western Ry. Co.* (1979), 73 Ill. App. 3d 74, 390 N.E.2d 1384, and *McNealy v. Illinois Central R.R. Co.* (1963), 43 Ill. App. 2d 460, 193 N.E.2d 879, expert testimony as to the permanence of pain and suffering was held to meet the standard. In *Onion,* the court stated that "some evidence" from either an expert or a layperson warrants the giving of a future pain and suffering instruction to the jury. In reaching this conclusion, the court noted:

> "The only expert testimony which clearly addresses the permanence of plaintiff's injury is Dr. Meyer's testimony that reinjury of plaintiff's back and neck injury was possible. Nonexpert testimony concerning plaintiff's future pain and suffering was elicited from plaintiff himself. Illinois law does not require that the evidence supporting a jury instruction on future pain and suffering be only in the form of expert testimony, and we see no reason for changing this rule of law. Jurors are capable of properly evaluating a plaintiff's testimony as to pain and suffering, and they will no doubt take into account a plaintiff's interest in the outcome of the lawsuit as well as plaintiff's lack of technical expertise on what his or her future physical condition, and related pain, may be." (*Onion,* 191 Ill. App. 3d at 322.)

Thus, while the *Onion* court noted that layperson testimony alone warrants the giving of a future pain and suffering instruction to the jury, it concluded that the testimony of the plaintiff, combined with the testimony of Dr. Meyer, met the standard of presenting "some evidence" of plaintiff's future pain and suffering. *Onion,* 191 Ill. App. 3d at 322.

■ ■ Accordingly, while an instruction on future pain and suffering may generally be improper where only layperson testimony has been presented to the jury, such is not the case here. In the case at bar, expert testimony as to the permanency of Robin's injury would

have been presented to the jury had the trial court not erroneously sustained defendant's objections to this testimony. A chiropractor is indeed competent in a personal injury action to express his opinion as to the permanence and future pain and suffering in connection with the injury, provided that the matter relates to the chiropractic profession and practice. Furthermore, anyone who is shown to have special knowledge and skill in diagnosing and treating human ailments is qualified to testify as an expert if his learning and training show that he is qualified to give an opinion upon the particular question in issue. It is not the province of the court to pass upon the merits now in use and practice in the treatment and cure of diseases and it is the duty of the court to admit a chiropractor's testimony as an expert. *Voight v. Industrial Comm'n* (1921), 297 Ill. 109, 130 N.E. 470; see *Morehead v. Peyton* (1979), 73 Ill. App. 3d 809, 392 N.E.2d 433 (where several chiropractic experts testified that plaintiff would require future medical services, trial court erred in refusing plaintiff's instruction which related to future medical expenses).

■■ We therefore conclude that, based on the particular facts of this case, where plaintiff attempted to present expert testimony as to the permanency of her injury, but was erroneously prevented from doing so, plaintiff's lay testimony as well as the testimony of her expert, which we can safely assume would have corroborated her testimony, presented "some evidence" sufficient to warrant giving a future pain and suffering instruction to the jury.

Defendant next contends that the verdict for compensatory damages awarding plaintiff Robin Young damages for past pain and suffering is against the manifest weight of the evidence presented at trial and is merely the result of passion or prejudice.

■■ It is well settled that the amount of a verdict is largely within the discretion of the jury and should not be disturbed on review unless it is obviously the result of passion or prejudice. (*Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 158 N.E.2d 63.) Whether a damage award falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience must be determined from consideration of the permanency and extent of the injury, possible future deterioration, medical expenses, and restrictions on daily activity because of the injury. *Mondelli v. Checker Taxi Co.* (1990), 197 Ill. App. 3d 258, 554 N.E.2d 266.

■■ In light of Robin's continuing pain and medical expenses, and the effect her injuries have had and continue to have on both her professional and personal life, we cannot say that the compensatory damage award to her "shocks the judicial conscience." At the time of the

accident, Robin was in excellent health. Following the collision, she suffered from neck and back pain, soreness, stiffness and headaches. She received over 150 treatments for these injuries from Dr. Engelhart, and she continues to see Dr. Engelhart in order to increase her mobility. Although her condition has improved, plaintiff claimed that even at the time of trial she was still experiencing pain and was still unable to lift heavy objects, carry her child, or sit comfortably for long periods of time.

Robin also testified that her professional life has been affected by her injuries. Prior to the collision, she was employed full time as a waitress, earning $400 a week. Although Robin did return to her employment at Jo-Jo's restaurant, she returned as a hostess rather than as a waitress since her injuries prevented her from carrying food trays. At the time of trial, Robin was working two days a week as a cocktail waitress, earning about $75 per night. She testified that although additional hours of employment were available to her, her injury prevented her from working on a full-time basis.

Furthermore, the accident affected Robin's personal life. Prior to the collision, Robin engaged in gymnastics and bike riding. Due to her back injury, she is no longer able to engage in these activities.

Defendant next contends that the trial court erred when it precluded defense counsel from addressing the issue of proximate cause in his closing statement. During the instruction conference, plaintiffs' counsel tendered and the trial court agreed to submit to the jury an instruction that each plaintiff has the burden of proving that the willful and wanton conduct of the defendant was a proximate cause of the injury to the plaintiffs. Defendant contends that when defense counsel attempted to address this precise issue in his closing argument, plaintiffs' counsel objected and the court sustained the objection. A review of the record indicates that the objection was properly sustained in light of the fact that defendant was misstating the case. What defendant stated in closing argument was that "since its really the second impact that they are claiming is the willful and wanton part of their case, you have to consider [whether] the second impact was the cause of the injury." Essentially, defendant was asserting that count II of the complaint, alleging willful and wanton misconduct, was based solely on the fact that after the initial impact between the two vehicles, Hummel hit plaintiffs' car a second time while attempting to leave the scene of the accident. At issue was not whether defendant's willful and wanton misconduct in causing the second collision was the sole proximate cause of the plaintiffs' injury, but whether defendant's course of conduct in twice colliding with plaintiffs' vehicle and then

leaving the scene was a proximate cause of the occurrence which gave rise to plaintiffs' injury. Thus, the trial court properly sustained the objection since aspects of defendant's conduct other than the second impact gave rise to the plaintiffs' injury.

Lastly, it should be noted that plaintiffs, although defending the judgment on appeal, also allege error in the trial court. The plaintiffs are concerned with the trial courts' decision to bar evidence of defendant's intoxication at the time of the accident. Plaintiffs request that in the event that this case is remanded, the court issue an order finding that the evidence of defendant's intoxication was improperly barred.

Plaintiffs are not, however, the proper party to raise the issue of an error in the trial court. A party cannot complain of error which does not prejudice it, and a party who obtains by judgment all that has been requested cannot appeal from that judgment. (*In re East Lake Fork Special Drainage District* (1985), 137 Ill. App. 3d 473, 484 N.E.2d 507.) Furthermore, a party cannot avail himself of those parts of a judgment which are beneficial to him and afterward appeal seeking to reverse the parts of the judgment unfavorable to him. (*Schroeder v. Meier-Templeton Associates, Inc.* (1984), 130 Ill. App. 3d 554, 474 N.E.2d 744.) Accordingly, we need not address whether the trial court erred in barring evidence of defendant's intoxication since the the only issues properly before the court are those raised by defendant, since he is the only party with a right to appeal in this case.

Accordingly, for the reasons stated above, we reverse the award of punitive damages and affirm the award of compensatory damages.

Affirmed in part and reversed in part.

LORENZ, P.J., and GORDON, J., concur.