(No. 16247.—Judgment affirmed.)
WILLIAM CARLYLE, Defendant in Error, *vs.* CHARLES R. BARTELS, Plaintiff in Error.

*Opinion filed December 16, 1924—Rehearing denied Feb. 6, 1925.*

1. DRAINAGE—*fee to Kaskaskia commons may be assessed for drainage—leases.* The title to the Kaskaskia commons was never vested in the State although the State had power to authorize the alienation of the commons and provide agencies by which it might be effected, and a purchaser of the fee to a part of the lands, which are subject to a fifty-year lease, is liable for a drainage assessment against the land where the lease makes the lessee liable for taxes, only.

2. LEASES—*lease making lessee liable for taxes does not include drainage assessments.* A special assessment for drainage purposes is not a tax, as the assessment is imposed for a special purpose and is made in proportion to the advantages accruing to the property in consequence of the improvement; and a provision of a lease that the lessee shall pay, in addition to the annual rental, "all assessments for taxes for all purposes that may be assessed against said premises according to law, during the continuance of said lease," does not include assessments for drainage, and the lessor or owner of the fee remains liable therefor.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. LOUIS BERNREUTER, Judge, presiding.

EMERY ANDREWS, WILLIAM H. SCHUWERK, and R. G. REAL, for plaintiff in error.

E. H. WEGENER, and J. FRED GILSTER, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

By virtue of the act of 1909 authorizing the sale of the lands of Kaskaskia commons, the predecessors in title of plaintiff in error in 1912 purchased lots 3 and 4 in survey 3. Theretofore, in December, 1889, these lots had been leased, under the authority granted by the act of 1851, to defendant in error for a period of fifty years, the lease providing that the lessee should pay, in addition to the annual rental fixed by the lease, "all assessments for taxes for all purposes that may be assessed against said premises according to law, during the continuance of said lease." Thereafter, in 1917, the Kaskaskia Island Levee and Drainage District was organized, and it included, with other lands, the lots in question. Plaintiff in error, the owner of the lands, demanded that the lessee pay the special assessments levied against the lands by the drainage district, and in order to prevent the cancellation of his lease defendant in error paid the installment for the year 1918. Thereafter this action was begun in the circuit court of Randolph county to recover the amount paid, and there was a judgment against the lessor in favor of the lessee. The cause is brought to this court for review on the ground that the judgment entered impairs the obligation of an existing contract, in violation of the Federal and State constitutions.

The principal contention of plaintiff in error is that the lands involved were public lands, and that the State of Illinois was the lessor when the lands were leased to defendant in error in 1889, and was the grantor that conveyed the lands to plaintiff in error in 1912. If the title to Kaskaskia commons and the subdivisions thereof has never been vested in the State of Illinois, then all of the argument of plaintiff in error in support of this contention falls.

In 1700 the Mission of the Immaculate Conception was established near the mouth of Kaskaskia river, and thereafter the commons, of which the lots in question are a part, was granted by the French government, which then held possession of the Mississippi valley, to the Parish of the Immaculate Conception of Kaskaskia. Kaskaskia and the country thereabout passed in succession under the dominion of Great Britain, the Commonwealth of Virginia and the United States of America. Prior to the admission of Illinois into the Union as a State, the Congress of the United States had confirmed the title to Kaskaskia commons granted by the French government one hundred years earlier. The first constitution of Illinois recognized the existence of this commons and forbade its sale or lease. The constitution of 1848 again recognized and protected the grant of this commons to the inhabitants of the Parish of the Immaculate Conception of Kaskaskia, and provided for its subdivision and sale or lease, under control of the State, on the petition of a majority of the voters interested in the commons. The State of Illinois never has held title to the lands in fee nor has it ever held the commons in trust. The legal title was originally granted to and later confirmed in the inhabitants of the Parish of the Immaculate Conception of Kaskaskia, for the use and benefit of such inhabitants. The State merely supervised the administration of the trust. The entity which held the legal title did not have power to alienate it, but this court has held that it was competent for the State to authorize an alienation and provide the agencies by which it might be effected. (*Stead* v. *President and Trustees of the Commons of Kaskaskia,* 243 Ill. 239; *Land Comrs. of Commons of Kaskaskia* v. *President and Trustees of Same,* 249 id. 578.) The lessee recognized when the lease was executed that the lands were then or might thereafter be subject to taxes, and the lease provided that the lessee should pay such taxes as might be assessed against the lands. This being true, the decision of the court

315—18

holding the purchaser of the fee liable for charges against the lands not included within the term "taxes" does not impair the obligations of the lease.

The next question presented is whether by the express terms of the lease the lessee is bound to pay the special assessments levied by the drainage district. Prior to the execution of this lease this court had so often held that special assessments are not taxes that the question was then no longer debatable. (*County of Adams* v. *City of Quincy,* 130 Ill. 566; *Illinois Central Railroad Co.* v. *City of Decatur,* 126 id. 92; *City of Chicago* v. *Baptist Theological Union,* 115 id. 245; *County of McLean* v. *City of Bloomington,* 106 id. 209; *Trustees of Illinois and Michigan Canal* v. *City of Chicago,* 12 id. 403.) The special assessments imposed are not for some general or public object, nor are they an exaction made for the purpose of carrying on the government directly or through the medium of municipal corporations. A special assessment is not a charge on the estate that lessens its value, as a tax does. The special assessments in question are imposed for a special purpose. The improvement is made for the convenience of a particular district, and the property there situated is required to bear the expense in the proportion in which it is benefited. The assessment is precisely in the ratio of the advantages accruing to the property in consequence of the improvement. It is but an equivalent or compensation for the increased value the property derives from the construction of the drainage system. Under the authorities cited and the decision in *DeClercq* v. *Barber Asphalt Paving Co.* 167 Ill. 215, the court properly held that special assessments levied by the drainage district were not taxes, as that term was used in the lease in question.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*