(No. 44771.–

NATIONAL DRAG RACING ENTERPRISES, INC., Appellee, v. KENDALL COUNTY *et al.*, Appellants.

*Opinion filed Oct. 2, 1972.—Rehearing denied Nov. 29, 1972.*

84

WARD and GOLDENHERSH, JJ., dissenting.

DALLAS C. INGEMUNSON and ANTHONY BASSAK, of Yorkville, for appellants.

MURPHY, GRIFFIN & DIXON, of Aurora (EUGENE G. GRIFFIN, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Kane County which enjoined the defendants, Kendall County and the Kendall County Board of Supervisors, from requiring the plaintiff, National Drag Racing Enterprises, Inc., to obtain a permit and pay a fee with respect to the races it conducts. The judgment also required Kendall County to deliver to the plaintiff the sum of $3700 representing permit fees paid by the plaintiff from April 1968 to April 1970. The appeal was taken originally to the Appellate Court, Second District, and by that court was transferred here.

The original action was filed in the circuit court of Kendall County. Thereafter, the plaintiff filed a motion seeking a change of venue from Kendall County on the ground that it could not obtain a fair and impartial trial in that county or from any judge sitting within that county. The affidavit in support of the motion recited that the plaintiff is the lessee and proprietor of a business operation known as the "Oswego Dragway," that members of the Kendall County Board of Supervisors and the sheriff of Kendall County had made public statements attributing "acts of vandalism or criminal acts" to patrons of the plaintiff's operation and had suggested that patrons of the operation had been before a named associate judge of the circuit court of Kendall County "as to criminal acts performed by them." The affidavit also stated that a member of the Kendall County zoning board had theretofore caused to be published in the "Joliet Circle," a newspaper of general circulation within Kendall County, various comments concerning the "noise, litter and vandalism" associated with the plaintiff's operation. The motion was allowed, and the case was transferred to the circuit court of Kane County and heard by a judge of that court.

The case turns upon the construction and the constitutionality of "An Act to provide for the issuance of permits by county boards for motor vehicle races and motor vehicle stunt events." (Ill.Rev.Stat. 1969, ch. 34, pars. 6101 and 6102.) That statute provides:

> "Section 1. In counties having a population of 500,000 or less inhabitants, no person, other than a county fair association, state fair or other not for profit association or corporation, shall hold any motor vehicle race or motor vehicle stunt event unless he obtains a written permit to do so from the county board of such county wherein the race or event is to take place.

> Section 2. Each county board shall fix a permit fee not to exceed $100 for all races and events held by a person, other than a county fair association, state fair or other not for profit association or corporation, on a single day. Each permit shall specify the day or days for which

the permit is effective. Provided, however, that if the race or event for which such permit is issued, is rained out or postponed for other good cause shown, the permit shall be valid for use within the next 8 days of the date specified in the permit. No permit shall be issued unless the fee is fully paid in advance of issuance. The county board shall pay one-half of each fee into the county treasury and shall transfer the remainder to the road and bridge fund of the township or road district wherein the race or event takes place."

Acting under this statute Kendall County has fixed a fee of $100 for each day's permit. The plaintiff contends that the statute does not apply to the motor vehicle races which it conducts because they are conducted upon private property and do not violate the zoning ordinances of the county. In the alternative, the plaintiff asserts that the statute is invalid if it is construed to apply to its operations.

The races which the plaintiff conducts are run on parallel, paved strips. Vehicles are raced by classes or design, the object being to obtain the best clocked time. The plaintiff advertises to attract spectators and the costs and expenses of the business, as well as its profits, come from the paid admissions of the spectators.

The sheriff of Kendall County testified that on those Sundays on which drag races took place, he hired two additional deputies. He hired them because of complaints that he received that the "dragsters were trying out their cars on subdivisions or on the Plainfield blacktop. *** We pinned it down that they were either coming to the dragstrip or going from the dragstrip." He also testified that he had talked to "some of the fellows at the dragstrip" and that they used county roads, blacktops, coming off the main highways to the plaintiff's operation. However, in response to a question by the attorney for the plaintiff, the sheriff testified that the problem that he had with the dragstrip was traffic "plus the fact that it's a prevention if something should break out in the dragstrip, I could never handle it alone with one man because of the

population at the dragstrip. I hired 2 additional men to work."

The sheriff testified that on Sundays when the drag races were operating there were six to seven hundred cars, "maybe more," at the drag races. He said that they came in all morning until noon and the drag operations normally terminate for the day around 4:15-4:30. He testified that if there was a State police car at the corner of Highways 31 and 34, "we could maybe get most of the automobile traffic cleared in 45 minutes to an hour." In response to further questions by the plaintiff's attorney the sheriff testified that there were other businesses in Kendall County that would attract as many as 700 or 800 cars in the course of a week's time. The sheriff also said, however, that "the other users are not dragsters; they are family people." He further testified that the number of people going to the dragstrip who would use the Plainfield road was negligible compared to the number which would use Route 34, which is the only road that affords access to the property in question.

The owner of the property testified that he had operated the drag races before the present plaintiff took over. He testified that during that time he hired additional personnel to take care of the traffic problem created by the drag races. He did so because the sheriff was not doing it.

The trial judge found that the plaintiff's use of the property did not violate the county zoning ordinance, that "no part of the actual business venture of the plaintiff pertains to the use of highways or township roads or any roads whatsoever within Kendall County"; that "the statute does not expressly provide for any regulatory powers by the defendants over the business of the plaintiff, nor does it require the defendants to provide traffic officers for the regulation of vehicle traffic." He held that the requirement that the plaintiff pay a fee and obtain a permit is an unlawful application of the statute,

and is "in fact an assessment and collection of a special and discriminatory tax prohibited to the defendants by the constitutions of the State of Illinois and of the United States." He therefore entered the order described above.

In this court the plaintiff's argument as to the nonapplicability of the statutes is based upon the proposition that in the event of ambiguity a statute should be construed in such a way as to avoid constitutional issues. We find nothing in the language of the statute to suggest that it does not apply to operations conducted upon private property, nor do we find any other ambiguity. In express terms, section 1 prohibits any person other than "a county fair association, state fair or other not for profit association or corporation" from holding any motor vehicle race or motor vehicle stunt event unless he has obtained a permit from the county. Section 2 requires the county board to fix a permit fee not in excess of $100 for each day. It requires that each permit shall specify the day for which it is effective. It requires payment of the full fee, in advance, and provides that the county board shall pay one half of each fee into the county treasury and the remainder into the road and bridge fund of the township or road district in which the race or stunt event takes place. The amount of the fee fixed by Kendall County in the present case is $100 per event.

Because we find no ambiguity in the statute, we turn to a consideration of its validity. The plaintiff objects to the statute because it "does not provide for the discretionary levy or application of collected proceeds, but to the contrary, would provide for a specific mandatory assessment for distribution into the maintenance of roads and bridges." No constitutional provision is cited, however, which prohibits the General Assembly from directing specifically the distribution of taxes which it authorizes counties or municipalities to collect. Joint financing of roads and bridges by counties in the aid of townships or small municipalities has long been provided by statute (see,

Ill.Rev.Stat. 1969, ch. 121, par. 5—501), and the pattern of a legislatively controlled distribution of a tax is a familiar one. See, *e.g.,* the Motor Fuel Tax Act (Ill.Rev. Stat. 1969, ch. 120, par. 424), and the Cigarette Tax Act (Ill.Rev.Stat. 1969, ch. 120, par. 453.29).

The plaintiff asserts that the statute is invalid because the exemptions which it contains in favor of "a county fair association, state fair or other not for profit association or corporation," destroy the uniformity of the tax. We are unable to accept this argument, however, for a statute which separately classifies, for taxing purposes, governmental and not-for-profit operations, cannot be said to be discriminatory.

For the proposition that neither a county nor a township may constitutionally be authorized, under the constitution of 1870, to levy special assessments for local improvements, the plaintiff relies upon *Committee of Local Improvements v. Objectors (1968), 39 Ill.2d 255,* and *People ex rel. Van Slooten v. Cook County Commissioners (1906), 221 Ill. 493.* Those cases so held, but the proposition that the plaintiff apparently derives from them—that because one half of the fees collected under the statute are to be paid into the road and bridge fund the present statute must be regarded as levying a special assessment—is a complete *non sequitur.* Neither a local improvement nor a special assessment is involved in the present case.

The plaintiff also argues that a statute which would permit a county to require $100 daily payments, or $36,500 annually, "would be clearly punitive if not confiscatory." The consideration of that contention may be deferred until a situation arises which calls for its determination. In the present case the plaintiff operated 37 events over a two-year period and its complaint alleged that it proposes to operate a minimum of 30 events per year in the future. It is apparently because of the sporadic nature of the kind of operations with which the statute

deals that the General Assembly used the term "permit" instead of "license." McQuillin on Municipal Corporations uses those terms synonomously, although saying: "*** following what is the usual practice, the term 'license' is more commonly employed to designate official municipal authorization of a continuing business or activity while the term 'permit' is more commonly, but not strictly, used to refer to municipal authorization of an act or activity that will be completed, the permit thereby being executed or terminated." 9 McQuillin on Municipal Corporations, sec. 26.151 (3rd ed. rev. 1964); *People ex rel. Mayfield v. City of Springfield, (1959), 16 Ill.2d 609.*

The plaintiff urges that because the statute does not use the word "tax," it cannot be regarded as a revenue measure. It says: "Nowhere within the provisions of Sections 6101 and 6102 of Chapter 34, are there contained any words expressing the power of a county 'to tax', or designating the fee to be collected as 'tax'. Yet, the principle enunciated by the Supreme Court has been that in order to sustain a statute as a taxing statute, it must either expressly confer the power or leave no question remaining as to its purpose as such. *Aberdeen Coal Co. v. Chicago, 315 Ill. 99; Herb Brothers v. City of Alton 264 Ill. 628.*" But in those cases the court was construing a statute and not applying a constitutional command. The problem there was to determine what authority had been delegated by the General Assembly and in that context the court contrasted the common forms of legislative grants of power to municipalities, on the one hand "to tax, license and regulate" and on the other hand "to license and regulate." It was in that connection that the court emphasized the significance of the absence of a grant of authority "to tax." The present statute is quite different. It commands the county to require a daily permit for the precise business in which plaintiff is engaged.

The constitution does not require the legislature to label the authority it exercises or delegates as either a

regulatory or a revenue power, nor are those two powers mutually exclusive. *(Metropolis Theater Co. v. City of Chicago (1910), 246 Ill. 20; City of Metropolis v. Gibbons (1929), 334 Ill. 431.)* To the extent that *Lamere v. City of Chicago (1945), 391 Ill. 552,* expressed a contrary view, it is contrary to earlier and later opinions, and is overruled. As was stated in *Co-ordinated Transport, Inc. v. Barrett (1952), 412 Ill. 321, 329,* "The exercise of both the police and revenue powers of the State may be combined in one act, provided they relate to only the one subject in the title and are not inconsistent therewith."

In *Johnson v. Halpin (1952), 413 Ill. 257, 270,* the court pointed out that "the concept of 'privilege' with reference to the taxing power has not been limited in Illinois, or in other States, to conduct previously authorized by the legislature, or which the legislature could entirely abolish, or to benefits conferred by the State. \*\*\* Therefore, a taxable privilege may involve lawful rights and conduct enjoyed without previous legal authority but over which the legislature has some power of control or classification." (See also, *People ex rel. Mayfield v. City of Springfield (1959), 16 Ill.2d 609, 618.)* The unique characteristics of the plaintiff's enterprise make it unmistakably an appropriate object both of control and of classification. See, *e.g., Peoples Gas Light and Coke Co. v. City of Chicago (1956), 9 Ill.2d 348.*

In our opinion the plaintiff has failed to demonstrate the unconstitutionality of the statute, and the judgment of the circuit court of Kane County is reversed.

*Judgment reversed.*

WARD and GOLDENHERSH, JJ., dissenting:

Section 2 of the statute (Ill. Rev. Stat. 1969, ch. 34, par. 6102) is not in language conventionally used to authoirze a local government to license, tax or regulate. Rather than empowering a county "to license," "to tax"

or "to regulate," or a combination of these, in unusual form it states that "each county board shall fix a permit fee ***."

We do not judge, as apparently the majority does, that the section should be interpreted as conferring authority to license for revenue, as well as to regulate. Considering the nature of the affected activities, that is, motor vehicle racing and stunting, their relation to public safety and the record here, we believe that the legislative intendment was to confer a regulatory power.

For regulatory licensing under the police power there must be regulatory provisions and these provisions must be reasonable and relate to public health, safety or welfare. The defendants admitted, and the trial court properly found, that there never had been any attempt to supervise or regulate the operation of the plaintiff's business. The only requirement imposed on the plaintiff was to pay the daily fee. We agree with the trial court's conclusions that the fee had been improperly exacted by the defendants and that the plaintiff was entitled to a refund of fees paid, though the trial court gave other grounds for its conclusions.

Saying that the authority conferred under a statute need not be labeled as either a regulatory or a revenue power and that both may be combined in one statute, the majority considers the statute here as such an enactment. Even if the absence of regulatory provisions were to be overlooked, such a construction poses difficulties in the context of questions arising here. It is generally said that where a license fee is imposed for purposes of revenue the fixing of the amount of the fee is discretionary, provided that the amount is not confiscatory. (See 1957 U. Ill. L.F. 93.) However, if the requirement of a fee constitutes an exercise of the police power the fee charged must bear some reasonable relationship to the additional burden and necessary expense involved in the regulation and super-

vision of the business concerned. (*City of Chicago Heights v. Public Service Co. of Northern Ill., 408 Ill. 604, 608-609.*) This requirement of a reasonable relationship of the fee to the burden undertaken can apparently now be circumvented simply by saying that the concerned statute conferred an authority to license for revenue as well as for regulation.