HIKEN FURNITURE COMPANY, Plaintiff-Appellant, *v.* THE CITY OF BELLEVILLE *et al.*, Defendants-Appellees.

Fifth District   No. 77-114

Opinion filed September 26, 1977.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (R. E. Eggmann, of counsel), for appellant.

Robert J. Sprague, City Attorney, of Belleville (Robert L. Jennings and Patrick M. Flynn, of counsel), for appellee City of Belleville.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Hiken Furniture Company, brought an action for declaratory judgment in the Circuit Court of St. Clair County seeking a declaration that an ordinance of the defendant, City of Belleville, creating a special service area and imposing a tax on properties within the area was invalid under the Illinois Constitution and statutes. Hiken appeals from a judgment upholding the validity of the ordinance.

The facts were stipulated and are not in dispute. On April 6, 1976, an ordinance was enacted by the City of Belleville creating a Special Service Area as authorized under "An Act to provide the manner of levying or imposing taxes for the provision of special services to areas within the boundaries of home rule units and non-home rule municipalities and counties" (Ill. Rev. Stat. 1975, ch. 120, par. 1301 *et seq.*). This legislation was enacted to implement the grant of power to home rule and non-home rule counties and municipalities provided in subsection $(L)(2)$ of section 6 of article VII, and subsection (6) of section 7 of article VII of the Illinois Constitution of 1970. While the City of Belleville is a home rule municipality, the power of special service area taxation was also made available to non-home-rule counties and municipalities.

Subsection $(L)(2)$ of section 6 of article VII, which section deals with grants of power and limitations of certain powers to home rule municipalities and counties, provides that "[t]he General Assembly may not deny or limit the power of home rule units * * * to levy or impose additional taxes upon areas within their boundaries in the manner provided by law for the provision of special services to those areas and for the payment of debt incurred in order to provide those special services." In *Oak Park Federal Savings & Loan Association v. Village of Oak Park*, 54 Ill. 2d 200, 296 N.E.2d 344 (1973), the supreme court held the constitutional provision was not self executing. Enabling legislation was thereafter enacted by the general assembly and the ordinance of the City of Belleville was enacted pursuant thereto.

The stated purpose of the ordinance here in question was to create a special service area comprising approximately 41 blocks in the commercial section of the city. The special service to be provided was the creation of a "semi-mall" to improve the "atmosphere for the public for shopping to generate sales tax revenue for the City and the use of City and County Governmental facilities." Within the mall numerous amenities would be provided to make the area more convenient and attractive to potential shoppers and others using city and county governmental buildings and facilities. New sidewalks, lighting, benches, drinking fountains, trees, planters and other beautification projects would be provided by funds derived through the issuance of $1,000,000 in general obligation bonds to be retired by levying an ad valorem tax on taxable property in the special service area at an annual rate not to exceed .25%.

The ordinance defined the special service area by describing a rectangular geographic area bounded by certain streets and a physical landmark, a creek running through the city; however, all properties physically located within this geographic area were not included within the special service area and subject to the special service area tax. Only commercial properties were subjected to taxation. Excepted from the special service area were all properties used exclusively for residential purposes and three named industrial properties, even though these properties were located within the geographic area defined by street name and landmark. Also excluded were properties north and south of two streets running easterly and westerly and immediately north and south, respectively, of the northerly-southerly boundary streets within the area described so that the total exclusions and "exceptions" resulted in an irregularly shaped geographic area.

Hiken Furniture Co. owns a commercial property subject to the special tax. Its attack on the validity of the ordinance is limited to the contention that the tax imposed is not spread uniformly on all contiguous property within the area as required by section 4(a) of article IX of the Illinois Constitution of 1970, section 8—3—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 8—3—5) and the Act authorizing special service area taxation. (Ill. Rev. Stat. 1975, ch. 120, par. 1301 *et seq*.). Hiken does not contend that the special service to be provided by the ordinance is not a proper public purpose or undertaking for special area taxation under the constitutional grant of power as implemented by the Act.

Section 2 of the Act provides that:

> "* * * 'Special Service Area' means a contiguous area within a municipality or county in which special governmental services are provided in addition to those services provided generally throughout the municipality or county, the cost of said special services to be paid from revenues collected from taxes levied or *imposed upon property within that area.* * * *" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 120, par. 1302.)

There are approximately 774 lots in the 41 blocks located within the general geographic description by street and landmark. Of this number, 118 lots are exempt from taxation under the general revenue laws because of their governmental, religious or charitable character but are not excluded from the special service area under the ordinance. Approximately 250 lots are excepted by name and legal description as exclusively residential in use, although these parcels are classified commercial or industrial under the zoning ordinance of the city, and 13 lots are excepted because of their industrial character. While Hiken argues that 20 lots have both a commercial and residential use, we cannot identify these lots from the record before us and must assume that they

are included within the special service area inasmuch as the ordinance excepts only lots used exclusively for residential purposes. Thus approximately one half the real property in the general geographic area will bear the burden of the special tax. Appellant insists that the Act (ch. 120, par. 1301 *et seq.*) requires uniformity of taxation within a contiguous geographic area comprising a special service area and that no nonexempt real estate may be excepted or excluded and not subjected to the special tax.

It is argued further that section 4(a) of the revenue article of the constitution and section 8—3—5 of the Municipal Code require that taxes upon real property imposed by municipalities be levied uniformly by valuation (Ill. Const. 1970, art. IX, §4(a)), and that the 1970 Constitution did not abolish the requirement that real property taxes must be levied uniformly within a municipality or within a special service area as now authorized by the 1970 Constitution and statute. See Ill. Const. 1870, art. IX, §§1, 9.

The city argues that Hiken misapprehends the definition of the special service area by failing to consider all parts of the ordinance that define the area; that the excepted and excluded properties are as much a part of the description of the special service area as the boundaries described by physical landmark and streets; and that nothing in the Act prohibits the city from defining the area by excepting or excluding certain properties from a more general description. It follows, the city argues, that the special service area tax will fall uniformly on the area as thus defined, and that the property subject to taxation is contiguous even though certain residential property wholly surrounded by taxable property may be excluded.

■■ The purpose for granting municipalities and counties the power to impose ad valorem taxes on limited areas within the boundaries of the governmental unit has been discussed at length in *Oak Park Federal Savings & Loan Association v. Village of Oak Park*, 54 Ill. 2d 200, 296 N.E.2d 344 (1973), and was developed in the debates of the constitution convention. (See generally 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3145-3148; 5 Proceedings 4248-50.) The grant of power was clearly a departure from the requirement of uniformity in ad valorem property taxation, and it was intended that units of general local government, that is counties and municipalities, should have the power to furnish special services and improvements to limited areas within their geographic boundaries and to impose taxes only on those areas that benefit from the service furnished or improvement received. This innovation was seen as a means to discourage the further proliferation of special units of local government that furnish only limited governmental services.

The precise problem presented here was not discussed, or apparently recognized during the proceedings of the constitutional convention. Should this procedure be sanctioned, a city or county could conceivably create a special service area embracing its entire territory, excluding from the burden of taxation selected properties. Of course, this is not the case before us and it may be difficult to hypothesize such a special service area where an appropriate public purpose would be served.

■■ The constitutional grant of power authorizes counties and municipalities to impose additional taxes on areas for the provision of special services to those areas. It seems clear that the burden of taxation was to be borne by the property benefitted by the special service and that the initial determination of benefit must of necessity be made by the governmental entity involved. Hiken does not question the purpose of the special project provided in the ordinance or the benefit to commercial property within the service district.

On the other hand, section 2 of the implementing legislation (Ill. Rev. Stat. 1975, ch. 120, par. 1302) states that a special service area is a contiguous area and that the cost of the special service is to be paid from revenues collected from taxes imposed upon the property within that area.

We are aware that in construing laws imposing taxes a strict or narrow rule of construction is to be employed and in case of doubt as to the meaning or application of laws or ordinances imposing taxes, they will be construed most strongly and narrowly against the governmental unit imposing the tax. (*Central Television Service, Inc. v. Isaacs*, 27 Ill. 2d 420, 189 N.E.2d 333 (1963).) We consider the Act in question to be implementive of the full power conferred on home rule municipalities under subsection (*L*)(2) of section 6, article VII. We do not believe the general assembly intended to restrict home rule municipalities in the exercise of their power to provide special services within their boundaries, particularly considering that the constitution provides that powers of home rule units are to receive a liberal construction (Ill. Const. 1970, art. VII, §6(m)).

While the emphasis of the constitutional grant of power is that the tax should be borne by the property benefitted without regard to contiguity, the implementing legislation would appear to add an additional concept of contiguity within a defined geographic area.

In the initial proposal of the Committee on Local Government, municipalities and counties were granted the power to "impose taxes differentially as provided by general law for the performance of special services * * *." (7 Proceedings 1579.) During debate, while the concept was unanimously approved, the word "differential" was rejected as not articulating the concept with clarity. (4 Proceedings 3145-47.) In the

search for a proper substitute word or words, Delegate Johnsen stated that "we want to stay away from the word 'area' or 'district' to give the impression of a different taxing area. All we are doing is allowing differential taxes for the services received." (4 Proceedings 3147.) Delegate Parkhurst, chairman of the Committee on Local Government, argued against the suggested phrase "in a limited area" and emphasized that the concept did not focus on geographical area, but on services or benefit. (4 Proceedings 3148.) In short, the property benefitted should bear the burden of the cost of the special service received.

The City of Belleville has determined that the properties to be benefitted by the improvements to be made in the commercial section of the city are the commercial properties. Of course, increased sales tax revenues and the general improvements in appearance and comfort in the commercial section of the city benefit all the citizenry, and therefore, all the "property" within the city, but it seems to us a reasonable determination by the city and a reasonable basis for imposing the tax here in question that the creation of the "semi-mall" will increase the public use of retail stores and other business in the commercial area of the city and that the property immediately and directly benefitted will be the commercial property. We note again that the plaintiff does not challenge the project as an inappropriate subject of special service area taxation.

■■ While the language used in the ordinance to describe the special service area created is somewhat unusual we find that the special service area created is "contiguous." A rectangular area is first described by streetname and a landmark; however, by the use of exceptions and exclusions from this general language, a quite irregular area results; however, all taxable property and property exempt from taxation only by application of the general revenue laws is "contiguous." It is clear that public streets must be disregarded in determining contiguity. The excepting or excluding of residential property surrounded entirely by taxable property does not defeat contiguity. In the instant case, the requirement of "contiguity" required by the Act has been met. We see no prohibition in the Act that would prohibit the exclusion or exemption from taxation of property that the municipality has determined will receive no benefit from the special improvement or service.

■■ We note that section 4 of the Act (ch. 120, par. 1304), prescribes a form of notice of the proposed territory included within the special service area which must be published and mailed prior to hearings required under the Act. The notice must include the "boundaries of the area by legal description and by street location, when possible." The ordinance was obviously drafted in compliance with this statutory notice requirement. Appended to the ordinance is a map or plat of the area in question. An examination of this plat demonstrates that the same territory

could have been described, preserving contiguity of area, by using only the legal descriptions of the lots and improvements to be included within the special service area. It would appear, had this method of description been employed that properties used exclusively for residential purposes and the three industrial properties could have been omitted from the area. The method of description used accomplishes the same result.

Sections 4 and 5 of the Act (Ill. Rev. Stat. 1975, ch. 120, pars. 1304, 1305) require that notice be given and public hearings be held on any proposal to create a special service area at which all persons owning property within the special service area may attend, be heard and object to the tax. Section 9 provides that if 51% of the electors residing within the special service area and 51% of the owners of property of record within the special service area object to the creation of the special service district or the imposition of a tax or the issuance of bonds, the district may not be formed nor may the tax be levied on bonds issued (Ill. Rev. Stat. 1975, ch. 120, par. 1309). The statutory procedure was followed in the creation of Special Service Area No. 1 by the City of Belleville. We hold that Special Service Area No. 1 was created by the City of Belleville in accordance with the constitution and laws of Illinois.

The judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed.

EBERSPACHER and G. J. MORAN, JJ., concur.