(No. 61077

CHICAGO SCHOOL FINANCE AUTHORITY, Appellee, v. THE CITY COUNCIL OF THE CITY OF CHICAGO *et al.*, Appellants.

*Opinion filed December 7, 1984.*

Winston & Strawn, of Chicago (Calvin Sawyier and Mary A. Martin, of counsel), for appellants.

Roger Pascal, Aaron J. Kramer, Wayne A. McCoy, Scott Bieber and Stephen J. Dragich, of Schiff, Hardin & Waite, of Chicago, for appellee.

JUSTICE CLARK delivered the opinion of the court:

This appeal involves an action for a declaratory judgment and a writ of *mandamus* which was filed in the circuit court of Cook County on November 16, 1984, by the Chicago School Finance Authority (the Authority) against the city council of the city of Chicago (the city council), its 50 members and the city clerk of the city of Chicago. The Authority sought to compel the city council to adopt and certify the tax-levy ordinance required by section 34A—503(a) of the School Finance Authority Act (the Act) (Ill. Rev. Stat. 1983, ch. 122, par. 34A—503(a))

to pay the principal of and the interest on $114,500,000 of general obligation bonds (Series E Bonds) that the Authority had contracted to sell to a group of 85 financial institutions. By agreement of the parties, the defendants' motions to dismiss and the plaintiff's motion for judgment on the pleadings were argued on November 19, 1984. Later that same day, the circuit court issued a final order for a declaratory judgment and a writ of *mandamus*.

On November 19, 1984, certain of the defendant aldermen filed a notice of appeal to the appellate court. On November 20, 1984, these defendants also filed a motion for a stay in the appellate court. On November 21, 1984, the appellate court, over the written objection of the plaintiff, granted a stay of the circuit court's final order until December 18, 1984. Later, on November 21, 1984, we granted the parties' joint motion for a direct appeal to this court pursuant to our Rule 302(b) (87 Ill. 2d R. 302(b)) and set an expedited briefing and hearing schedule. In their motion, the parties urged this court to issue a ruling on the merits no later than December 13, 1984—"the latest practicable date on which a favorable ruling of this Court would permit the delivery and payment for the Series E Bonds." However, during oral argument, it was stated that the last practical date this court could act is actually December 9, 1984.

In January of 1980, the Illinois General Assembly passed, and the Governor signed, Public Act 81—1221 (Pub. Act 81—1221, eff. Jan. 16, 1980), which created the Authority, an independent body both corporate and politic and a unit of local government under the Act. The Authority is governed by a five-member board of directors, two of whom were appointed by the Governor with the approval of the mayor of Chicago; two directors were appointed by the mayor of Chicago with the approval of the Governor, and one director, appointed

jointly by the Governor and mayor, serves as chairman of the Authority. (Ill. Rev. Stat. 1983, ch. 122, par. 34A—301.) The Authority was created to provide financial assistance to the board of education of the city of Chicago (the board). The Act was viewed as the legislative and executive response to the board's poor financial situation. The Authority, as an independent governmental body, was to possess the credibility necessary in the financial markets to borrow the money which was so badly needed for the operation of the Chicago public school system. The Act established a mechanism by which the Authority could sell bonds to raise the needed funds for the board. The financing mechanism is a five-step process under which the Authority first publicly advertises for competitive bids; second, receives the bids and determines which bid is the highest and best; third, accepts the winning bid and *demands and directs the city council to levy a tax to pay for the principal of and interest on the bonds*; fourth, pursuant to the Authority's demand the city council passes the tax-levy ordinance; and fifth, the Authority issues the bonds.

In 1984, the General Assembly, concerned about the poor condition of school buildings in Chicago, passed an amendment to the Act that increased the Authority's borrowing limit and broadened permissible borrowing purposes to include school construction and rehabilitation (Pub. Act 83—1270, eff. Aug. 28, 1984). The Governor signed the bill. On November 1, 1984, the Authority adopted a resolution authorizing a public sale of the $114.5 million of Series E Bonds and sought competitive bids. On November 13, 1984, the Authority accepted the bid of an 85-member syndicate led by Continental Illinois National Bank and Trust Company of Chicago and adopted a resolution to that effect. The Authority had stated to prospective bidders that it expected delivery of the bonds to be made to the winning bidder on or about

November 20, 1984. The resolution passed on November 13, 1984, also demanded and directed the city council to adopt an ordinance providing for the levy and collection of a tax to pay the principal of and interest on the Series E Bonds, as required by section 34A—503 of the Act (Ill. Rev. Stat. 1983, ch. 122, par. 34A—503). On that same date, the finance committee of the city council voted to recommend that the city council "not adopt or pass" such an ordinance. Pursuant to city council rules, the ordinance was automatically tabled. The only way in which the city council could have considered the ordinance was to disapprove the finance committee recommendation. However, on November 14, November 20, and November 21, 1984, the city council refused to disapprove the finance committee's recommendation. Since the tax levy is a condition precedent to closing, the Authority is unable to issue and receive payment for the Series E Bonds. The Authority is obligated under the terms of the bid to issue the bonds and complete delivery to the purchasers no later than 12 noon on December 18, 1984.

Basically, two issues have been raised in this case, namely: (1) whether the Act is constitutional, in that it imposes a mandatory duty upon the city council to adopt a tax-levy ordinance upon the demand of the Authority; and (2) whether a writ of *mandamus* is the appropriate relief in the case at bar.

We will now address the first issue in this case. The power of the General Assembly to raise revenue is subject only to the limitations as are expressly stated in the 1970 Constitution, and such express limitations are exclusive. (*Hoffman v. Clark* (1977),69 Ill. 2d 402, 423.) Article X, section 1, of the 1970 Constitution provides:

"SECTION 1. GOAL—FREE SCHOOLS

A fundamental goal of the People of the State is the educational development of all persons to the limits of

their capacities.

The State shall provide for an efficient system of high quality public educational institutions and services. Education in public schools through the secondary level shall be free. There may be such other free education as the General Assembly provides by law.

The State has the primary responsibility for financing the system of public education."

In section 34A—102 of the Act the General Assembly stated:

"(a)(ii) A sound financial structure is essential to the continued operation of any school system. It is vital to commercial, educational and cultural interests that the public schools remain in operation. To achieve that goal, public school systems must have effective access to the private market to borrow short and long term funds.

(iii) To promote the financial integrity of boards of education of cities having a population exceeding 500,000, *it is necessary to provide for the creation of school finance authorities with the powers necessary to promote sound financial management and to assure the continued operation of the public schools.*

(b) It is the purpose of this Article to provide a secure financial basis for the continued operation of the public schools. The intention of the General Assembly, in enacting this legislation, is to establish procedures, provide powers and impose restrictions to assure the financial integrity of the public schools while leaving principal responsibility for the educational policies of the public schools to the boards of education within the State, consistent with the requirements for satisfying the public and purpose herein set forth." (Emphasis added.) Ill. Rev. Stat. 1983, ch.122, pars. 34A—102(a), (b).

The section of the Act in question states in pertinent part: "Before or at the time of issuing any Bonds, the Authority shall demand and direct the City Council of the City to provide by ordinance for the levy and collection of a direct annual tax ***." (Ill. Rev. Stat. 1983, ch. 122, par. 34A—503(a).) The defendants argue that this

section violates the Constitution because it usurps the city council's discretionary power to levy taxes upon the citizens of Chicago, and thereby violates the city's home rule power.

All parties place heavy reliance on *Polich v. Chicago School Finance Authority* (1980), 79 Ill. 2d 188, a case in which this court held that the Act was constitutional. In *Polich*, in light of all of the arguments regarding the invalidity and unenforceability of section 34A—503, we upheld the validity of the entire act, paying special attention to section 34A—503, without any dissent on the merits. We agree with the Authority's view that *Polich* is dispositive in this case.

In *Polich*, we held that the power of a city's school financing authority to compel the city council to levy taxes to be used for the payment of bonds issued to finance the schools is constitutional and cannot be characterized as a violation of the constitutional home rule powers of a city. 79 Ill. 2d 188, 199.

In view of the General Assembly's aforementioned findings, in view of *Polich,* and in view of the strong presumption of constitutionality which must be overcome to invalidate the statute before us, we hold that the Act is not violative of the 1970 Constitution.

We now address the second issue presented, namely, whether a writ of *mandamus* is the appropriate relief in this case. The lower court has held that the enactment of the tax levy is a ministerial act and has issued a writ of *mandamus* directing the city council to adopt an ordinance levying a property tax to pay the principal of and interest on the bond series in question.

The issuance of a writ of *mandamus* is, of course, discretionary, and we do not consider that under the circumstances here its issuance will be necessary or appropriate. Prior to our decision there had been a dispute as to whether the city council had a duty to pass the ordi-

nance in question. Today, that dispute has been resolved.

Having resolved the constitutional dispute, we have confidence that the city council will perform its statutory duty and enact the ordinance by December 13, 1984. For that reason and in the exercise of our discretion, we reverse that portion of the judgment issuing the writ of *mandamus* but affirm the order entering the declaratory judgment.

*Affirmed in part and*
*reversed in part.*