*In re* EAST LAKE FORK SPECIAL DRAINAGE DISTRICT (East Lake Fork Special Drainage District, Respondent-Appellant, v. The Village of Ivesdale, Objector-Appellee).—*In re* PESOTUM SLOUGH SPECIAL DRAINAGE DISTRICT (Pesotum Slough Special Drainage District, Respondent-Appellant, v. The Town of Tolono *et al.*, Objectors-Appellees).—*In re* FOUNTAIN HEAD DRAINAGE DISTRICT (Fountain Head Drainage District, Respondent-Appellant, v. Community College District No. 505 (Parkland College), Objector-Appellee).

Fourth District   Nos. 4—85—0080, 4—85—0084, 4—85—0086 cons.

Opinion filed October 10, 1985.

Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign (Mary A. Perlstein, of counsel), for appellants.

No brief filed for appellees.

Thomas W. Kelty, of Pfeiffer & Kelty, of Springfield, for *amicus curiae*.

JUSTICE WEBBER delivered the opinion of the court:

These consolidated cases raise the question of whether the General Assembly has the power, under the Illinois Constitution of 1970, to exempt from drainage-district assessment public highways, streets and alleys.

The objectors in each case are units of local government owning or controlling highways, streets or alleys which have been assessed by the respective drainage districts, respondents herein. Respondents are drainage districts organized under the Illinois Drainage Code (Code) (Ill. Rev. Stat. 1983, ch. 42, par. 1—1 *et seq.*). Each district had in effect an annual maintenance assessment roll which was confirmed by the circuit court of Champaign County pursuant to the Code (Ill. Rev. Stat. 1983, ch. 42, par. 5—19).

The objectors filed separate objections to the annual maintenance assessments levied by the respective drainage districts for the fiscal year 1983. The objections were grounded upon the passage of Public Act No. 83—726, which amended sections 5—2 and 5—3 of the Code (Ill. Rev. Stat. 1983, ch. 42, pars. 5—2, 5—3) by specifically exempting public highways, streets and alleys from property subject to drainage district assessments. The objections requested that the circuit court of Champaign County order the public thoroughfares identified in the objections removed from the maintenance assessment rolls and sought refunds from the assessments paid under protest. The drainage dis-

tricts responded, challenging the constitutionality of the statutory exemption.

The trial court ultimately entered orders sustaining the objections of the village of Ivesdale and the town of Tolono but overruling the objections of Parkland College unless that objector could show that the thoroughfares over which it exercised control were "public" within the meaning of the amended statute. It is from these orders that respondents appeal, reiterating their constitutional arguments. The objectors have not filed a brief in this court, but the Illinois Municipal League has been granted leave to file a brief as *amicus curiae.*

■■ As an initial matter, we find that the Fountain Head Drainage District does not have standing to appeal from the trial court's order which overruled the objection of Parkland College. It is fundamental that a party must be aggrieved by the judgment of the trial court in order to appeal from that judgment. A party cannot complain of error which does not prejudice it, and a party who obtains by judgment all that has been requested cannot appeal from the judgment. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 457 N.E.2d 9.) While the order in question "denied" the response of the Fountain Head Drainage District which challenged the constitutionality of the exemption, this statement was superfluous to the legal effect of the order, which was to overrule the objection. It is the judgment of the trial court, and not whatever else may have been said by it, which is on appeal to a court of review. (*Rabus v. Calcari* (1959), 16 Ill. 2d 99, 156 N.E.2d 567.) We therefore dismiss the appeal of the Fountain Head Drainage District in General No. 4—85—0086.

Turning to the merits, respondents' primary argument is that the General Assembly has no power under the Illinois Constitution of 1970 to exempt any property from assessment for local improvement and that the amendments cited above should therefore be declared unconstitutional and the judgment of the trial court reversed. Respondents contend that section 6 of article IX of the 1970 Constitution does not authorize the exemption of property from assessment, as distinguished from exemption from general taxation. That section provides in relevant part:

> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes." Ill. Const. 1970, art. IX, sec. 6.

Respondents' argument is premised on a relatively obscure line of

early cases holding that exemptions from special assessment were not authorized by constitutional provisions permitting the General Assembly to exempt public, religious, and charitable property from general taxation. These holdings were based upon the perceived distinction between taxation and special assessment, as described in *Carlyle v. Bartels* (1924), 315 Ill. 271, 274, 146 N.E. 192, 193:

> "The special assessments imposed are not for some general or public object, nor are they an exaction made for the purpose of carrying on the government directly or through the medium of municipal corporations. A special assessment is not a charge on the estate that lessens its value, as a tax does. The special assessments in question are imposed for a special purpose. The improvement is made for the convenience of a particular district, and the property there situated is required to bear the expense in the proportion in which it is benefited. The assessment is precisely in the ratio of the advantages accruing to the property in consequence of the improvement. It is but an equivalent or compensation for the increased value the property derives from the construction of the drainage system."

Based upon this distinction, early decisions struck down acts of the General Assembly which attempted to grant exemptions from special assessment for property that was otherwise eligible for exemption from general taxation. In *City of Chicago v. Baptist Theological Union* (1885), 115 Ill. 245, 2 N.E. 254, the court held that a provision in a seminary charter granted by the General Assembly which exempted seminary property from special assessment was invalid. Section 3 of article IX of the 1848 Constitution provided: "The property of the state and counties, both real and personal, and such other property as the general assembly may deem necessary for school, religious and charitable purposes, may be exempt from taxation." The court found that this provision did not authorize the exemption of property from special assessment, which was not embraced within the term "taxation" in the constitutional provision.

In *South Park Commissioners v. Wood* (1915), 270 Ill. 263, 110 N.E. 349, the court, relying on *Baptist Theological Union*, held that a statute creating a park commission was valid insofar as it exempted park property from general taxation, but invalid insofar as it exempted the property from special assessment. To the same effect is *City of Rock Island v. Chippiannock Cemetery Association* (1927), 328 Ill. 236, 159 N.E. 271.

On the other hand, some authority can be found to uphold the amendments at issue. In *Higgins v. City of Chicago* (1857), 18 Ill. 276,

the court stated that taxation or special assessment for local improvements is merely a question of policy, and public property may be exempted from the levy of either. That case held, however, that special assessment against a public square was proper in the absence of any exemption expressed by statute or in the city charter. In *West Chicago Park Commissioners v. City of Chicago* (1894), 152 Ill. 392, 38 N.E. 697, it was held that the city had no jurisdiction to levy a special assessment against park district property within the city limits since the park district exercised plenary and exclusive jurisdiction as a municipal corporation over such property by statute, and that the burden of paying for improvements should be imposed upon the city as whole. Further, it is clear that the property of the United States government and the State of Illinois is exempt from special assessment, at least where there is no express statutory authority for such assessment. *Fagan v. City of Chicago* (1876), 84 Ill. 227.

All of the above cases were decided under prior constitutions, and no case has been found which addresses this issue under the 1970 Constitution. We find relevant section 8 of article VII, which provides in pertinent part: "Townships, school districts special districts and units, designated by law as units of local government, which exercise limited governmental powers or powers in respect to limited governmental subjects shall have only powers granted by law." The language restricting the powers of such units of government to those granted by law is new to the Illinois Constitution. (Compare Ill. Const. 1870, art. IX, sec. 9.) This provision incorporates the concept of Dillon's Rule whereby units of local government, including drainage districts, possess only those powers authorized by the General Assembly. (Ill. Ann. Stat., 1970 Const., art. VII, sec. 8, Constitutional Commentary, at 85 (Smith-Hurd 1971).) We think it obvious that, under section 9 of article IX, the General Assembly could in its discretion totally abolish the Illinois Drainage Code or eliminate the authority of drainage districts to levy special assessments. It requires no leap in logic to imply from this provision the legislative power to classify property subject to drainage district assessment.

■■ ■ Moreover, it is a fundamental precept of constitutional law that the legislative power is plenary, and every subject within the scope of civil government rests in the General Assembly unless inhibited by some constitutional provision. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73, *appeal dismissed, cert. denied* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612.) More specifically, the power of the General Assembly to raise revenue is subject only to the limitations expressly stated in the 1970 Constitution, and such limita-

tions are exclusive. (*Chicago School Finance Authority v. City Council* (1984), 104 Ill. 2d 437, 472 N.E.2d 805.) No provision of the 1970 Constitution prohibits the General Assembly from legislating exemptions from special assessment. To conclude that the constitutional provision authorizing permissive legislative exemptions from general taxation (Ill. Const. 1970, art. IX, sec. 6) impliedly excludes the power to exempt the same type of property from special assessment would be an unwarranted application of the maxim *"expressio unius exclusio alterius."* Rather, acts of the legislature concerning exemption from taxation are presumed constitutional and all reasonable doubts must be resolved in favor of constitutionality. *North Shore Post No. 21 of the American Legion v. Korzen* (1967), 38 Ill. 2d 231, 230 N.E.2d 833.

We find support for our decision in the erosion of the distinction between general taxation and special assessment which has occurred since the cases upon which respondents rely were decided. The controlled distribution of tax revenues is now a familiar pattern of taxation in this State. (See, *e.g.*, Motor Fuel Tax Law (Ill. Rev. Stat. 1983, ch. 120, par. 417 *et seq.*); Division 6 of the Illinois Highway Code (Ill. Rev. Stat. 1983, ch. 121, par. 5—601 *et seq.*).) The constitution does not prohibit the General Assembly from specifically directing the distribution of taxes which it authorizes units of local government to collect. (*National Drag Racing Enterprises, Inc. v. Kendall County* (1972), 54 Ill. 2d 83, 295 N.E.2d 712.) Such taxes are akin to special assessments in that they are levied for a specific special purpose, and the revenues therefrom are deposited in discrete funds, as opposed to the general treasury of the unit of government.

One example of such a hybrid revenue measure is "An Act to provide the manner of levying or imposing taxes for the provision of special services to areas within the boundaries of home rule units and non-home rule municipalities and counties" (Ill. Rev. Stat. 1983, ch. 120, pars. 1301 through 1311). This act authorizes such entities to impose a "tax" upon real property within a "special service area" created by the unit of government to fund local improvements. This legislation was passed to implement sections 6(1) and 7(6) of article VII of the 1970 Constitution, which provide that home-rule units, counties, and municipalities which are not home-rule units shall have the power "to levy or impose additional taxes upon areas within their boundaries in the manner provided by law for the provision of special services to those areas and for the payment of debt incurred in order to provide those special services."

The act relating to special areas represents a new concept of taxation in Illinois, referred to as a "differential" tax, and is a departure

from the requirement of uniformity contained in the 1870 Constitution. (*Oak Park Federal Savings & Loan Association v. Village of Oak Park* (1973), 54 Ill. 2d 200, 296 N.E.2d 344.) The purpose of the act was to authorize units of local government to tax different areas within their boundaries at different rates as the services to those areas required. This innovation was intended to discourage the further proliferation of special units of local government that provide only limited governmental services. *Hiken Furniture Co. v. City of Belleville* (1977), 53 Ill. App. 3d 306, 368 N.E.2d 961.

In *Hiken Furniture*, a property owner within a special service area created by the city challenged the constitutionality of an ordinance authorizing the levy of a tax to fund the creation of a downtown mall. The asserted infirmity was that the tax was not spread uniformly as required by section 4(a) of article IX of the 1970 Constitution because it exempted residential and industrial property. The court noted that many of the lots within the special service area were already exempt under general revenue laws because of their governmental, religious or charitable character. It was further noted that the intent of the act relating to special service areas was that the property benefited by the improvements bear the burden of the cost of the special service received. The court upheld the constitutionality of the ordinance, holding that the city could reasonably determine that retail and commercial property would be directly and immediately benefited and should therefore bear the entire burden of the improvements.

It has long been recognized that the distinction between taxation and special assessment is highly technical. (*City of Chicago v. University of Chicago* (1922), 302 Ill. 455, 134 N.E. 723; see also *Andrews v. County of Madison* (1977), 54 Ill. App. 3d 343, 369 N.E.2d 532.) Any distinction has been virtually obliterated under the 1970 Constitution. That constitution provides that drainage districts shall have only the powers granted by law, and there are no inhibitions on the plenary power of the General Assembly to enact exemptions from special assessment.

■ Respondents also argue that the amendments to sections 5—2 and 5—3 of the Illinois Drainage Code violate the due process and equal protection guarantees of the United States and Illinois Constitutions. This argument is premised on the fact that if public highways, streets and alleys are removed from the drainage district assessment rolls, the remaining property owners are forced to bear an increased burden for the same benefit received. In this connection, respondents note that section 5—1 of the Illinois Drainage Code provides in part:

"No land or other property shall be assessed for benefits more than its just proportion of the entire assessment or in excess of the benefits thereto." Ill. Rev. Stat. 1983, ch. 42, par. 5—1.

Respondents do not specifically identify the asserted due process defect. Due process is generally satisfied by the notice requirements contained in the Code (Ill. Rev. Stat. 1983, ch. 42, pars. 5—5, 5—6). *In re City of Woodstock* (1983), 115 Ill. App. 3d 502, 450 N.E.2d 960.

■ As regards the equal protection claim, although there is no uniformity requirement expressed in the Illinois Constitution for special assessment, principles of equality and uniformity apply, so far as is practicable, but only to the property directly benefited by the local improvement. (*In re City of Woodstock* (1983), 115 Ill. App. 3d 502, 450 N.E.2d 960.) Further, the question of whether one property owner is assessed more than his proportionate amount is determined by examining what proportion the individual assessment bears to the whole amount and not by comparing it to the assessment of another individual tract. *Commissioners of Boone's Pond Mutual Drainage District v. O'Daniel* (1920), 291 Ill. 528, 126 N.E. 198.

■ Although the Illinois Constitution requires uniformity and equality in real property taxation, the General Assembly has the power to classify such property in assessing taxes, and such classification enjoys a presumption of validity. (*Hoffman v. Clark* (1977), 69 Ill. 2d 402, 372 N.E.2d 74.) The reasons justifying a classification need not appear on the face of a statute, and the classification must be upheld if any state of facts can reasonably be conceived which would sustain it; the question is whether there is rational basis for the classification. *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 372 N.E.2d 74.

■ There is no legislative history available regarding the amendments at issue to assist in discerning the intent of the legislature in passing the exemptions. It appears that the General Assembly could have reasonably determined that drainage district facilities primarily benefit private landowners. (Compare *Hiken Furniture Co. v. City of Belleville* (1977), 53 Ill. App. 3d 306, 368 N.E.2d 961.) Further, levying special assessments against the "owners" of public highways, streets and alleys (*i.e.*, taxpayers) in reality imposes a disproportionate burden upon some taxpayers who own no private property within the drainage district and thus receive no benefit for the additional burden. Further, drainage district assessments do not create liens on municipal property and thus several provisions in the Drainage Code (*e.g.*, Ill. Rev. Stat. 1983, ch. 42, pars. 5—7, 5—21, and 5—25) are ineffective as regards such property. See *Saline*

*Branch Drainage District v. Urbana-Champaign Sanitary District* (1946), 395 Ill. 26, 69 N.E.2d 251.

A statute which separately classifies governmental and charitable property for taxing purposes is generally not discriminatory. (*National Drag Racing Enterprises, Inc. v. Kendall County* (1972), 54 Ill. 2d 83, 295 N.E.2d 712.) Moreover, the fact that an act of the General Assembly exempts certain property, thereby shifting the tax burden to other taxpayers, does not invalidate such exemption under the due process and equal protection guarantees; if accepted, such a proposition would invalidate *all* tax exemptions which to some degree shift the burden of taxation to others. *People ex rel. County Collector v. Northwestern University* (1972), 51 Ill. 2d 131, 281 N.E.2d 334, *cert. denied* (1972), 409 U.S. 852, 34 L. Ed. 2d 95, 93 S. Ct. 65.

■ Finally, respondents argue that the amendments to the Drainage Code violate the prohibition against special legislation contained in section 13 of article IV of the 1970 Constitution. Tax statutes classifying municipal property as exempt have consistently been upheld as general laws. (See *People ex rel. Curry v. Decatur Park District* (1963), 27 Ill. 2d 434, 189 N.E.2d 338.) The instant amendments affect all similarly situated property (*i.e.*, public highways, streets and alleys) in the same fashion and thus respondents' argument in this respect has no merit.

For the foregoing reasons, the appeal in General No. 4—85—0086, Fountain Head Drainage District v. Community College District No. 505 (Parkland College), is dismissed, and the judgment of the circuit court is otherwise affirmed.

General No. 4—85—0086 dismissed, General Nos. 4—85—0080 and 4—85—0084 affirmed.

TRAPP and MORTHLAND, JJ., concur.